ELLA M. PICKEL v. WILLIAM PICKEL and FREDERICK J. PICKEL, Appellants.

Division Two, June 1, 1912.

1. **APPEAL TO ANOTHER COURT: Evidence.** Where the pendency of an appeal from an order allowing plaintiff a certain sum as attorney's fee in her suit for maintenance is not set up in defendant's answer or demurrer to her petition to set aside certain conveyances of corporate stocks and to subject them to the payment of her judgment, it will be inferred that, under the statute (Sec. 1800, R. S. 1909), no such appeal is pending, although there is some oral testimony that an appeal was taken.

2. **FRAUDULENT TRANSACTION: Transfer of Stocks to Avoid Execution: Equitable Owner: Gift.** A gift by a father of stocks to a married son, in order that he might use the income to support himself and wife, made mostly when they were living happily together, but partly only a few months prior to their separation, and retransferred, without consideration, to the father within a week or two after the wife had separated

243 Sup.—41

Pickel v. Pickel.

from the son and her attorney had written to the father asking that some arrangement be made for the support of her and her child, reveals no such equitable ownership in the father, when the court is asked to subject those stocks to execution to pay a judgment in favor of the wife for maintenance, as makes it necessary to consider the legal effect of the contract of retransfer; because, in fact, there never was a contract between the father and son whereby the father was to retain the equitable title to the stock issued to the son, but the retransfer was simply fraudulent as to her.

3. ———: ———: **Husband: Obligation to Support Wife and Child.** The obligation of the husband to support his wife becomes complete at the marriage and continues after he abandons her without good cause; and the obligation of the father to support his child is complete when the child is born. Neither claimant for such support can be classed as subsequent creditors of the husband or father; and a transfer by him of his personal property to defeat the payment of those obligations is fraudulent as to them.

4. ———: ———: **Filing Amended Petition to Meet Proof.** Where after the evidence is closed an amended petition to conform the pleadings to the facts proven is filed, and no effort is made to strike it out, the judgment rests upon such amended petition. And where defendants at the trial changed their testimony as previously given in their depositions, and by stipulation of parties certain issues pending in other kindred suits were engrafted upon the action, and the court by those stipulations was given jurisdiction to determine those issues, it was entirely proper for the court to permit the amended petition to be filed.

5. ———: ———: **Garnishment: Incomplete Remedy: Maintenance Installments: Impounding Fund: Trustee.** Although a wife, who has recovered a judgment against her husband for maintenance, to be paid by monthly installments, has a remedy at law by garnishment against her husband's father as the fraudulent transferee of her husband's corporate stocks, yet where such remedy is inadequate she may maintain her suit in equity to have such transfer set aside and to subject the stocks to the payment of her judgment, and to have the court impound the fund thus fraudulently transferred and out of which as a judgment creditor she is entitled to be paid, by placing it in the hands of a trustee to hold, manage and sell for the purpose of paying the monthly installments; and since she could by garnishment reach only so much of the stock standing in the name of her husband's father as would pay one month's installment, and must resort to such proceeding only as the monthly installments became due, garnishment is an inadequate remedy.

6. ————: ————: **Excessive Levy.** Where the husband has divested himself of all his property for the purpose of avoiding the payment of a judgment in favor of his wife for the maintenance of herself and her minor child, by monthly installments; and the conduct of himself and the fraudulent transferee indicates that if any property be left in the hands of either it will, if possible, be placed beyond the reach of the wife, it is entirely proper for the court to sequester all of the husband's property for the payment of the wife's judgment, and said decree will not be held to amount to an excessive levy upon his property.

7. ————: ————: **Attorney's Fee.** An attorney's fee cannot be allowed to plaintiff's attorney, as a part of the decree, in her suit to set aside a fraudulent transfer of her husband's corporate stocks and subject them to the payment of her judgment for maintenance.

8. ————: ————: **Jurisdiction: Part of Maintenance Suit.** A suit to set aside the fraudulent transfer by a husband to his father of certain corporate stocks, brought against both the father and the husband, and to subject those stocks to the payment of the wife's judgment for maintenance, and to the payment of her judgment for costs and attorney's fee in his unsuccessful divorce suit, is not a continuation of the maintenance suit. The father was not a party to either of those suits, and the judgment in the divorce suit was wholly disconnected with the maintenance suit.

9. **CONSTITUTIONAL QUESTION: Not Timely Raised: No Specific Part of Constitution Designated.** In a suit to set aside a fraudulent transfer of corporate stocks and to subject them to the payments of plaintiff's judgment for maintenance, the constitutionality of Sec. 8295, R. S. 1909, authorizing the court to sequester a husband's property and compel him to give security for the support of his wife and child, will not be considered if raised for the first time in the motion for a new trial, nor if no particular clause of the Constitution which renders it invalid is pointed out.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED (*in part*).

*Barclay, Fauntleroy & Cullen* for appellants.

(1) A father has a right to give property to his son on condition by will or otherwise and retain the

title, giving to the son the income, and creditors have no right to complain. Such a gift does not become effective to pass title and may be revoked at any time and the record title put in the donor. Partridge v. Covender, 96 Mo. 452; Roden v. Helm, 192 Mo. 86. (2) A conditional gift does not pass title; hence Frederick J. Pickel never had title to any of the stocks in controversy. The elder Pickel retained the ownership and the right to control said stocks and the certificates were always held in escrow by the Pickel Marble & Granite Company. Albert v. Albert, 21 Mo. 277; Thomas v. Thomas, 107 Mo. 459, 20 Cyc. 1210; Keyl v. Westerhaus, 42 Mo. App. 49; In re Soulard, 141 Mo. 642; Banking Co. v. Miller, 190 Mo. 640; Pennell v. Ennis, 126 Mo. 355; Godard v. Conrad, 125 Mo. App. 165. (3) A mere expectation of future indebtedness or even an intent to contract debts, if it be only an intent, not coupled with a purpose to convey the property in order to keep it from being reached by the creditors, will not make the conveyance invalid as against such future creditors. Payne v. Stanton, 59 Mo. 158; Pepper v. Carter, 11 Mo. 540. (4) The general rule is that a voluntary conveyance cannot be set aside at the instance of subsequent creditors, in the absence of proof that the conveyance was made with actual fraudulent intent. Krueger v. Vorhauer, 164 Mo. 156; Caldwell v. Smith, 88 Mo. 44; Scudder v. Morris, 107 Mo. App. 634. (5) The statute on the subject of fraudulent conveyances only applies to the fraudulent transfer of the estate and interest of the debtor in the property, and has no application to a conveyance made solely for the purpose of transferring to the rightful owner property held in trust for him. If a debtor holds the legal title to property which in equity belongs to another, his conveyance of the legal title to such equitable owner will not be deemed fraudulent as to the creditors of the former. De Berry v. Wheeler, 128 Mo. 59; Aultman v. Booth, 95 Mo. 383;

Desmond v. Myers, 113 Mich. 437; Dermott v. Carter, 109 Mo. 21; Bank v. Miller, 24 N. Y. App. Div. 551; Clark v. Rucker, 7 B. Mon. (Ky.) 583; Donohoe v. Hull, 24 Can. Sup. Ct. 683; Mills v. Scott, 43 Fed. 452; Jauch v. De Socarros, 56 N. J. Eq. 538.    (6)   As shown by the averment of the bill and by the proof, Fred J. Pickel had, at the time he returned the stocks, ample means to meet all his obligations then existing and all future obligations which he, as a reasonable man, might anticipate, and hence the transfers cannot be set aside and the plaintiff is not entitled to relief in equity. Welch v. Maim, 193 Mo. 325; Walsh v. Ketchum, 84 Mo. 431.    (7)   The creditor must show that he has failed in the ordinary mode of collection to make his debt, and that, independent of the property so conveyed in fraud of his rights, there is not sufficient to satisfy such debts.   For, if it is alleged or shown there is other property sufficient for that purpose, it is an act of capricious intermeddling with the contracts of others to permit the creditor to interfere and set the conveyance aside.   Merry v. Fromon, 44 Mo. 518; Somerville v. Hellman, 210 Mo. 574.    (8) The petition contains no averment that defendants William Pickel or Fred J. Pickel are insolvent; insolvency is essential to equity jurisdiction, as otherwise there is a complete remedy at law; where one is sought to be charged in equity for conversion of stock in a corporation, it is necessary that the petition allege that the converter is insolvent.   Somerville v. Hellman, 210 Mo. 567. Plaintiff must show that she has exhausted all remedies at law, because equity has no jurisdiction where legal remedy is complete.   The allegations in the case at bar show that plaintiff has a remedy at law.   In these circumstances no equity appears in the bill. McKee v. Allen, 204 Mo. 674.    (9) On the contrary it affirmatively appears that the defendants are not insolvent, for it is alleged ''that defendants are all possessed of practically unlimited

financial resources.'' Wherefore no cause of action is stated. Somerville v. Hellman, 210 Mo. 567. Property fraudulently transferred is subject to garnishment in the hands of the transferee, and equity will not assume jurisdiction to set aside the transfer. Humphreys v. Atlantic Co., 98 Mo. 549; Hungerford v. Greengard, 95 Mo. App. 659; McDaniel v. Bryan, 123 Mo. App. 640; Dunlap v. Mitchell, 80 Mo. App. 395. Property fraudulently conveyed, and its proceeds, may be reached in the hands of the transferee by garnishment. Epstein v. Clothing Co., 67 Mo. App. 221; Strauss v. Ayres, 34 Mo. App. 255; Organ Co. v. Pettil, 34 Mo. App. 545. (10) Equity cannot entertain this proceeding to avoid a multiplicity of suits. The decision in any one action at law settles (so plaintiff pleads) all questions. Because executions may issue every thirty days on a judgment already entered is not a sufficient basis to support an action in equity. Ins. Co. v. Morlman Co., 73 Fed. 68. (11) This decree may be likened unto an excessive levy under an execution, and the same reasons which induce the courts to hold excessive levies illegal should operate to influence the court to hold this decree seizing seven or eight thousand dollars' worth of property to satisfy a judgment for a few hundred dollars erroneous and oppressive. 2 Freeman on Executions (3 Ed.), sec. 253. (12) The decree is erroneous because it impounds and sequesters a vast amount of property and requires both the corpus and income to be held and applied to the payment of contingent obligations to fall due in the future. The courts have no power to strip a man of all his property and deny him the right to use it because some years hence he may have to meet a contingent and unmatured demand. Egan v. Fush, 46 La. Ann. 474; Baviere v. Feste, 9 La. Ann. 535; Neilson v. Pool, 17 La. 209.

*Randolph Laughlin* for respondent.

(1) Conceding to appellants the utmost benefit that can be claimed from their own evidence in their own favor, at the time of the original conveyances from William to Frederick, there was no condition precedent attached as a condition of delivery of title which operated to prevent the vesting in Frederick of a full and complete title to all of the property in suit. Beatty v. College, 177 Ill. 295; Doty v. Willson, 47 N. Y. 580; Matter of Hicks, 14 N. Y. 320; Hackett v. Moxley, 65 Vt. 75; Fassett's Appeal, 167 Pa. St. 452; 20 Cyc. 1210. There is absolutely no evidence tending to show that there was any condition precedent to the vesting of title in Frederick, and no evidence that the property remained the property of William; and the evidence that there was an agreement or a condition subsequent, whereby William reserved the right to recall his gifts, is overturned by evidence to the contrary. Chambers v. Chambers, 227 Mo. 283; Laughlin v. Leigh, 226 Mo. 640; People v. Board, 245 Ill. 343. The condition, reservation, or remainder claimed by William Pickel to have been attached to his gifts to his son, was and is null and void on its face. R. S. 1909, sec. 2884. The phrase "goods or chattels" as used in this statute, includes shares of stock. So also does the word "property." Fine v. Hornsby, 2 Mo. App. 64; Bernhardt v. Walls, 29 Mo. App. 210; Banta v. Chicago, 172 Ill. 204; Boardman v. Cutter, 128 Mass. 390; Ayres v. French, 41 Conn. 151; North v. Forest, 15 Conn. 404; Ellison v. Brigham, 38 Vt. 66; French v. Schoonmaker, 69 N. J. L. 6; Kendall v. Kendall, 4 Russ. 370; In re Gold, 80 U. S. 362; Curtis v. Phillips, 5 Mich. 113; Stuart v. Marquis, 11 Ves. 665; Foxall v. McKeanney, 9 Fed. Cas. 646; Blount v. Haney, 43 Mo. App. 652; Cook v. Clippard, 12 Mo. 379; McDermott v. Barnum, 16 Mo. 114. William's claim was also void as in conflict with the Statute of Frauds, R. S. 1909,

sec. 2783. Independent of the above, William's conduct in holding Frederick forth as the true owner of the property in suit; in permitting him to act as such for more than ten years, and to contract a marriage and become a father on the faith of his apparent ownership, and to thereby incur obligations to respondent, to her child, and to society, which now rest upon him in the form of judgments, estops William to now deny the truth of the situation which he thus proclaimed. McDermott v. Barnum, 19 Mo. 208; Snodgrass v. Emery, 66 Mo. App. 466; Busby v. Altes, 140 Mo. App. 718; Camp v. Railroad, 62 Mo. App. 85; Ratican v. Depot Co., 80 Mo. App. 535; Reischick v. Klinghoefler, 91 Mo. App. 430; Huntsucker v. Clark, 12 Mo. 339; Price v. Hallett. 138 Mo. 573; Bank v. Doran, 109 Mo. 49. Marriage and motherhood are valuable considerations, and entitle respondent to invoke the doctrine of estoppel. Lionberger v. Baker, 88 Mo. 447; Bank v. Read, 131 Mo. 553; Nowack v. Berger, 133 Mo. 24. (2) The transfers were fraudulent, and in fraud of respondent's rights. All of the property transferred belonged to Frederick. He not only did not reserve sufficient property to discharge his debts, but he did not reserve any property at all, except only one share of Pickel Realty stock which was omitted through mistake. Respondent was not a mere subsequent creditor. Her right to support dated from her marriage. A wife who recovers a judgment for support or alimony is a creditor of her husband within the purview of the statute governing fraudulent conveyances, and a conveyance made by him which is either voluntary, or made with the intent to defeat the collection of her judgment, and after ground for suit has arisen in her favor, is invalid as to her claims under the judgment, and it is immaterial whether the conveyance was made before or after the institution of her suit. Maze v. Griffin, 65 Mo. App. 385; 17 Century Digest, Divorce, sec. 749, 753; 14 Cyc. 798. Even if

the amendment were improper, appellants waived the point by failure to move to strike out. Grimes v. Lumber Co., 111 Mo. App. 358. The defense of adequate remedy at law is not available to appellants, because this suit was specifically authorized by the statutes, R. S. 1909, secs. 8295, 8301, 2881; and because it was also a case for the exercise of equity jurisdiction to avoid a multiplicity of suits. 1 Pomeroy's Eq. Jur. (1905) secs. 243, 250, 252; Peterson v. Fleming, 63 Ill. App. 357. Appellants voluntarily abandoned this defense by stipulating that the proceedings at law should be dismissed, and that this court should determine the status of all the property involved therein. The conveyances being voluntary, it was sufficient impeachment for respondent to show that they were made without valuable consideration and that they hindered or delayed her as a creditor. This showing made those conveyances fraudulent in law, irrespective of the motives of the parties. Porter v. Wagner, 125 Mo. 450; Johnson v. Murphy, 180 Mo. 597; Scharff v. McGaugh, 205 Mo. 366; Patten v. Casey, 57 Mo. 118; Hurley v. Taylor, 78 Mo. 238; Bohannon v. Combs, 79 Mo. 305. But respondent went beyond the limits of this requirement, and proved not only the fraudulent intent of Frederick, but also the fraudulent participation and intent of William. Gust v. Hoppe, 201 Mo. 293; Bank v. Fry, 216 Mo. 24; Bank v. Worthington, 145 Mo. 91; Van Raalte v. Harrington, 101 Mo. 602; Henderson v. Henderson, 55 Mo. 534; Simon v. Schooley, 66 Mo. App. 406. In transactions between parties bearing a close personal relation to each other, such as parent and child, courts of equity apply the most rigid scrutiny when there is a charge of fraud. Bank v. Fry, 216 Mo. 42; Farwell v. Meyer, 67 Mo. App. 566. (3) The scope of the decree was not excessive, and was necessary to do justice to respondent on the showing made. The court would have been fully justified in appointing a sequestrator or trustee.

Donnelly v. West, 17 Hun. 564; Bank v. Walker, 7 Ala. 926; Taylor v. Dwyer, 131 Ala. 91; Roberts v. Stoner, 18 Mo. 491; Fitch v. Bank, 99 Ind. 443; Anderson v. Trust Co., 25 Wash. 20. There is also authority for the less harsh and burdensome remedy of injunction, which the court adopted. Errissman v. Errissman, 25 Ill. 119; Draper v. Draper, 68 Ill. 17; Questel v. Questel, Wright (Ohio), 492. The old chancery practice of sequestration is not violative of any constitutional guarantees, and is firmly rooted in Missouri law. R. S. 1909, secs. 288, 2110, 2122, 2375, 8295; Roberts v. Stoner, 18 Mo. 491; Henderson v. Dickey, 50 Mo. 165; State ex rel. v. Horner, 16 Mo. App. 193; In re Kinsolving, 135 Mo. App. 639; White v. Geraerdt, 1 Edw. (N. Y.) 336; 19 Ency. Pl. & Pr., p. 545. Equity may adapt its relief to the circumstances of the case, and there is no limit to the variety of its decrees. 16 Cyc. 478; Woodruff v. Mining Co., 18 Fed. 753. Installments of money falling due under a decree at regular intervals are likened to annuities, and a decree in equity to enforce their payment should not be limited to the recovery of arrears, but should be extended so as to embrace and secure future installments. Maher v. O'Hara, 9 Ill. 424; Peterson v. Fleming, 63 Ill. App. 357; Marshall v. Thompson, 2 Mumf. (Va.) 413; Townshend v. Duncan, 2 Bland Ch. (Md.) 45; De Graw v. Clason, 11 Paige (N. Y.) 136; Brandon v. Brandon, 46 Miss. 222. In a case of this character, where a fund is recovered or brought into court, the costs are not limited to costs made taxable by statute, but embrace all legitimate expenses, including attorneys' fees, which may be allowed either under the general prayer, or under the prayer for costs. Rumsey v. Frank, 84 Mo. App. 512; Woodard v. Mastin, 106 Mo. 364; Ins. Co. v. Delatorre, 70 Fed. 645; Lillard v. Oil Co., 58 Atl. (N. J.) 189; Mason v. Alexander, 44 Ohio St. 337; Ex parte Plitt, 2 Wall Jr. C. C. Rep. 479; Woodruff v. Railroad, 129 N. Y. 27;

Downing v. Marshall, 37 N. Y. 380; Henderson v. Dickey, 50 Mo. 164. There is an inherent power in a court of equity to allow counsel fees and expenses, in addition to court costs, whenever the equities of the case make such allowance necessary to the doing of complete justice. Kirn v. Railroad, 124 Mo. App. 276; Little v. Trust Co., 146 Mo. App. 589; Mason v. Alexander, 44 Oh. St. 337. Where a conveyance by a debtor is set aside as fraudulent at the suit of a creditor, and the property is subjected to the payment of the creditor's claims, a proper case is presented for the exercise of the power in question, and the creditor's attorney should be allowed a fee out of the proceeds of the property reached by the suit. Trustees v. Greenough, 105 U. S. 533; White v. Land Co., 49 Mo. App. 468; 20 Cyc. 825, notes 47, 48, 49; Fechheimer v. Baum, 43 Fed. 719; Lawton v. Perry, 45 S. C. 319; Woodruff v. Railroad, 129 N. Y. 27; Olds v. Tucker, 35 Ohio St. 581; Railroad v. Peters, 113 U. S. 122. To charge the fee against the *res* was proper. Woodard v. Mastin, 106 Mo. 364; Rumsey v. Frank, 84 Mo. App. 513; Trustees v. Greenough, 105 U. S. 527. It was the duty of the circuit court to allow and tax the fee. Padgett v. Smith, 207 Mo. 236; Little v. Trust Co., 146 Mo. App. 589; Little v. Bank, 231 Mo. 208. It would have been reversible error to omit to tax this fee in this case. White v. Land Co., 49 Mo. App. 468; Robinson v. Dundee Co., 80 Mo. App. 621; Meddaugh v. Wilson, 151 U. S. 333; Lawton v. Perry, 40 S. C. 255; Weigand v. Supply Co., 4 W. Va. 133; 3 Am. & Eng. Ency. Law (2 Ed.) 458; Tuttle v. Claflin, 86 Fed. 964; United States v. Boyd, 79 Fed. 858; Campbell v. Society, 54 L. R. A. 817.

BROWN, P. J.—Action in equity to set aside conveyance of corporate stock and to subject said stock to payment of judgments. From a decree for plaintiff, defendants appeal.

This action grows out of prior litigation between plaintiff Ella Pickel and defendant Frederick J. Pickel in the circuit court of St. Louis city.

On June 22nd, 1910, plaintiff seperated from her husband, Frederick J. Pickel, and retained the custody of their only child, a son, of the age of six years. In November, 1910, plaintiff instituted against defendant Frederick J. Pickel, a suit for maintenance of herself and child, under section 8295, Revised Statutes 1909. In that suit she was allowed $80 per month for her maintenance during the pendency of the action, and upon the final hearing thereof, on March 15th, 1911, she was awarded $100 per month for the permanent support of herself and said child, together with costs of the action.

This final judgment for support and maintenance of plaintiff and her child was rendered by Division No. 3 of the circuit court of St. Louis City, and at the time of entering said judgment, said trial court retained jurisdiction of the subject matter and parties to the action, and leave was granted to each of said parties to apply for such supplemental or additional orders as they might think necessary for the protection and enforcement of their rights under the judgment.

This part of the decree for maintenance is of some importance, in view of the contention of defendants that the judge who tried the present action did not sit in Division No. 3 of the circuit court of St. Louis City, and therefore, possessed no jurisdiction of this action, one of the purposes of which is to aid in carrying into effect the decree for maintenance.

On March 27th, 1911, said Division No. 3 of the circuit court of St. Louis City entered a further order in said action for maintenance, allowing to plaintiff therein the sum of $750 for attorneys' fees in prosecuting said cause.

There is oral evidence that an appeal was taken from said allowance of attorneys' fees, but such evi-

dence is unsatisfactory; and as the pendency of such appeal is not set up in defendant's demurrers nor in their answer in this cause, we will infer that no such appeal is pending. [Sec. 1800, R. S. 1909.]

On October 25th, 1910, defendant Frederick J. Pickel instituted a suit for divorce against plaintiff. On January 14th, 1911, the circuit court of St. Louis City rendered a judgment awarding plaintiff $400 for suit money and attorneys' fees in said divorce suit. On February 7th, 1911, Frederick J. Pickel dismissed his divorce suit, and the costs of that action, amounting to $290.85, were taxed against him. No appeal was taken from said allowance of suit money and attorneys' fees, nor from the judgment for costs.

Defendant Frederick J. Pickel, having failed to pay some of the installments of the judgment for maintenance and the judgment given in plaintiff's favor for attorneys' fees, suit money and costs in the divorce suit, plaintiff caused execution to be issued on said judgments, and levied upon five shares of stock in the Pickle Marble & Granite Company, standing in the name of defendant, William Pickel, but which had been transferred to him by his son, Frederick, after the latter was separated from his wife. Upon the seizure of said stock, defendant William Pickel lodged with the sheriff of St. Louis City written claims as owner of said stock. The plaintiff duly filed with the sheriff her indemnifying bonds under each of said executions; whereupon defendant William Pickel, to prevent a sale of the stock so levied on, executed and delivered to said sheriff his bonds, conditioned for the safe-keeping and preservation of said stock, and that same should be produced when and where the court might direct, as provided by section 2204, Revised Statutes 1909. These claims and bonds were returned by the sheriff to the court out of which the execution issued, and the claims of William Pickel to the ownership of said stock are now pending as independent actions between plain-

tiff and William Pickel in the circuit court of St. Louis City. However, by stipulation of the parties, the claims of plaintiff and defendant William Pickel in the actions growing out of the aforesaid executions shall be considered and determined in this action.

The object of this action is to set aside transfers of corporate stock of Frederick J. Pickel to his father, William Pickel, which transfers are alleged to have been made to defeat plaintiff's claim for support of herself and child. Said stock so alleged to have been fraudulently transferred is described as follows:

Seventy-five shares of the capital stock of the Pickel Marble & Granite Company, a corporation, of the par value of $7,500, but of the actual value of at least $15,000;

Ten shares of the capital stock of the German American Bank, of the par value of $1,000, and of the actual value of about $2,000;

Five shares of the capital stock of the Broadway Savings Trust Company, of the par value of $500 and of the actual value in excess of $1,000;

Fifteen shares of the capital stock of the St. Anthony Improvement Company of San Antonio, Texas.

Upon final hearing the court dismissed the plaintiff's bill as to the defendant Pickel Marble & Granite Company, and plaintiff did not appeal from that part of the judgment.

The judgment below in this case was rendered July 24, 1911, and finds that defendant Frederick J. Pickel is insolvent and execution proof except as to the corporate stock hereinbefore described; and further finds that said stock was fraudulently transferred by said defendant Frederick J. Pickel to defendant William Pickel for the purpose of hindering, delaying and defrauding plaintiff of money to become due her under such judgments as have been rendered in suits then contemplated.

The judgment herein finds that there is due plaintiff for attorneys' fees in the divorce suit instituted against her by defendant Frederick J. Pickel, the sum of $350, also $380 as balance awarded to her for maintenance of herself and child up to and including July 1st, 1911, also the sum of $760.10, balance on attorneys' fees and suit money allowed to her for prosecuting the action for maintenance, together with the further allowance in the sum of $500, for attorneys' fees in prosecuting this action to set aside the fraudulent sale of corporate stock, making a total indebtedness of defendant Frederick J. Pickel, to plaintiff, exclusive of interests on said judgments and allowances, the sum of $1990.10.

The judgment of the circuit court directed defendant William Pickel to pay to plaintiff within ten days all of the amounts due her under the judgments, orders and allowances above recited and to give bond to plaintiff in the sum of $10,000, for the payment of such furture installments of the judgment for maintenance as might become due to her. Defendant William Pickel was also enjoined from transferring the corporate stock fraudulently conveyed to him by his son.

1. The defendant admits that the corporate stock in controversy was transferred by Frederick J. Pickel to his father, William Pickel, about August 1st, 1910, but contends that the transfer was not fraudulent as to plaintiff, for the reason that William Pickel was at all times the equitable owner of said stock, and had merely caused it to be issued to his son Frederick to enable the latter to receive the dividends which might accrue thereon. That at the time said stock was placed in Frederick Pickel's name there was an express understanding between the son and father that the father should retain the equitable title to said stock and that the same should be retransferred to him at any time he might for any cause so request.

Defendants also rely upon the following additional grounds to secure a reversal of the judgment entered below:

2. That the obligation of defendant Frederick J. Pickel to support his wife (the plaintiff), and her child (their mutual offspring), places her and her child in the position of subsequent creditors and does not render invalid the transfer of stock to his father, even if such was really transferred without consideration.

3. That the plaintiff's petition does not recite any facts which if true will sustain the judgment.

4. That even if it be true that defendant Frederick J. Pickel has transferred his stock to William Pickel for the purpose of defrauding plaintiff, she has a complete and adequate remedy at law by garnisheeing William Pickel as the fraudulent transferee of said stock.

5. That the petition and evidence do not show that defendant Frederick J. Pickel is insolvent.

6. That the decree in this case amounts to an excessive levy upon the property of defendants, and is so unreasonable that it should be reversed.

7. That the allowance of attorneys' fee of $500 to plaintiff for prosecuting this action is not within plaintiff's pleadings, and is erroneous and illegal.

8. That the trial court did not have jurisdiction in this action, because it is a continuation of the original action for maintenance, and should have been brought and presented before the judge of Division No. 3 of the circuit court of St. Louis City.

Such further points in the pleadings and evidence as are necessary to a full understanding of the case will be noted in our opinion.

## OPINION.

It will be entirely unnecessary to determine the legal effect of the alleged contract by Frederick J. Pickel to retransfer to his father the corporate stock

issued to Frederick.   The evidence fully satisfies us
that no such contract was made at the time such stock
was issued to him.

Aside from the inherent improbability of such an
agreement having been entered into, the evidence of
Frederick and William Pickel themselves establishes
the fraudulent character of the transfer of the cor-
porate stock in dispute from Frederick Pickel to Wil-
liam Pickel almost as completely as if they had con-
fessed in open court the charges contained in plain-
tiff's petition.

It is proven that the plaintiff left the home of her
husband and returned  to her mother, at Chicago,
Illinois, with her son, on June 22, 1910.   Within a
few days thereafter, she employed an attorney, who
wrote letters to both Frederick and William  Pickel,
notifying them that plaintiff would no longer live
with her husband, and asking some arrangement be
made for the support of herself and child.

During July, 1910, a consultation was held in St.
Louis between the attorney for the plaintiff and Fred-
erick J. Pickel and his attorney, looking toward a
settlement of the plaintiff's claim for support; but
those negotiations did not result in any agreement.

About the 1st of August, 1910, Frederick retrans-
ferred to his father the corporate stock described in
plaintiff's petition.   This corporate stock had been
given or donated to Frederick Pickel by his father
William Pickel, in amounts and on the dates follow-
ing:

In Pickel Marble & Granite Company, 25 shares
on March 17, 1900;

In the same company, 20 shares on March 27,
1902;

In the same company, 30 shares on July 7, 1906;

In the German American Bank, 10 shares on Feb-
ruary 15, 1910.

In the Broadway Savings & Trust Company, 5 shares on January 31, 1905.

At the trial of this action on July 24th, 1911, both Frederick J. Pickel and William Pickel testified that at the time these shares were given to Frederick there was an understanding between said father and son that the father was to retain the equitable title to all of said shares; that the transfers were only made to enable the son to receive the dividends thereon and that at any time the father might so desire, the stock should be retransferred to him.

On September 20, 1910, the deposition of Frederick J. Pickel was taken under a stipulation, and in that deposition Frederick Pickel admitted that the stock was a gift from his father, and when asked by plaintiff's counsel why he retransferred it to his father, he replied: "I didn't like your program; I didn't know what was in future for me. My father had given it to me, and I gave it back to him. Q. What program? A. Well the letters you were writing. I didn't know what was in future for me, and I turned it over to him. Q. Do you mean the letter I wrote to you or to Mr. Noonan? A. Well the character of all of it. Q. Did you tell your father about it? A. No further than the one he had gotten from you. Q. He told you that he had received a letter from me? A. Certainly."

In giving his evidence in the action for maintenance on March 4th, 1911, before the present action was instituted, defendant Frederick Pickel testified as follows:

"Q. State what was said by you and your father at the time the certificates were issued? A. Well, he told me he wanted to encourage me in business, and I must not sell the stock; that they would probably pay a dividend to help me along.

"Q. State all that was said. A. The conversation was along that line, that he wanted to encourage

me in business; wanted me to work hard; that this was valueless unless I worked hard and made money so that they could render a dividend. He did not want me to sell it.

"Q.    State all of the conversation, if you have not.    (Plaintiff's counsel objects to the question as leading.    Objection overruled).    A.    He said that if at any time I misbehaved myself, as he put it, didn't do right or sold any of the stock, he would not give me any more."

The deposition of defendant William Pickel was also taken on November 30, 1910, in which, when called upon to explain why the stock in controversy was re-transferred to him by his son, he testified as follows:

"Q.    Did you have any conversation with your son at or about the time of these transfers?    A.    Yes, sir.

"Q.    What was said in that conversation?    A.    I said to him, 'I have advanced you a good deal of money and you have no way of paying it back, and you had better transfer those stocks back to me to get even;' and he was willing to do that; and done that.

"Q.    Was that before you received a letter from me?    A.    Afterwards.

"Q.    How long after you received a letter from me?    A.    Maybe a couple of weeks.

"Q.    Did you make any answer to the letter you received from me?    A.    No, sir.

"Q.    I understood you to say awhile ago, Mr. Pickel, you did not lend your son any money; you simply gave it to him.    A.    That is so. He had no way of paying it back.    I just gave it to him.

"Q.    You kept no track of the amount you gave him?    A.    No, sir.

"Q.    Did you at the time of transferring these stocks know how much money you had given him?    A. I figured it up in my head, and in the last four or five years, and I came to the conclusion he ought to re-

turn those stocks to make it square in the family.
. . .

"Q. *Have you told everything that was said at the time this transfer was made?* A. I think I have.

"Q. What did your son say at that time? A. I didn't speak to him at the time about your letter or anything else; didn't want to talk about it.

"Q. Did he say anything at all when you told him you wanted him to transfer those stocks? A. I think it was my proposition to do that after I got your letter.

"Q. Did my letter cause you to make that proposition? A. Well, your letter and other points together helped to bring it on".

In the present case after testifying most positively that he retained the equitable title to the stock in controversy when he caused it to be issued to his son, defendant William Pickel was asked the following questions and gave the following answers:

"Q. At the time you were asked these questions and gave these answers, at the time this deposition was taken before Mr. Hennings, did this occur: 'Q. Did you say anything else when you told him you wanted him to transfer those stocks? A. I think it was my proposition to do that after I got your letter.

"'Q. Did my letter cause you to make that proposition? A. Well, your letter and other points helped to bring it on.

"'Q. What other points helped to bring it on? A. Advancing him money these last four or five years out of my pocket.

"'Q. Anything else? A. Nothing else.'

"Q. Did you so testify? A. Yes, sir.

"Q. Was it true? A. I think so, as far as I remember.

"Q. Then, if the prior arrangement or agreement made between you and him by which he was to

retransfer those stocks to you on request, when you were asked these questions as to why you caused this transfer to be made, why didn't you then tell about that kind of an agreement? A. Maybe I didn't think of it.

"Q. Didn't think of it? A. No.

"Q. You had forgotten it, hadn't you? A. I suppose so.

"Q. You didn't remember it until you employed Messrs. Barclay, Fauntleroy & Cullen as your attorneys in this case? A. They had nothing to do with it all.

"Q. I know; but you didn't remember it until after you employed them; then you thought about it and told Mr. Cullen? A. I don't remember any conversation with Mr. Cullen about that.

"Q. When did you first remember that kind of an agreement? A. Never spoke to Mr. Cullen about it.

"Q. Whom did you speak to about the agreement first? A. Nobody.

"Q. Never mentioned a word about it to anybody before you went on this stand? Is that right? A. Yes, sir."

Further testifying in this case, defendant William Pickel said:

"Q. Why didn't you have your son transfer that stock to you before his wife ran away? A. Well, I had it transferred to him while he was living with her; I supposed they were going to live together. That was the purpose of transferring the shares to him, to help them along; paid all his bills, doctor bills and everything.

"Q. You wanted to help him take care of his wife and child as long as she lived with him? A. I wanted to take him up and help him along.

"Q. Why didn't you have that transfer made back to you before she left him? A. I don't know anything about that.

"Q. Did her leaving him have anything to do with your causing him to transfer it back? A. No, I suppose not.

"Q. You suppose not? A. No.

"Q. You can't give any reason how it is that you happened to cause him to transfer it at the time he did, can you? A. No, I can't give any reason; no.

"Q. You can't explain it at all? A. No, sir."

The evidence of William Pickel further shows that he had given corporate stock to another son and also his daughters; but those gifts were entirely unconditional and accompanied by no obligation to retransfer to the father.

William Pickel testified that the aggregate value of the stocks retransferred to him by his son Frederick about August 1st, 1910, was $7225; other evidence indicated that it was worth more.

Another item of evidence in the case is that at the time plaintiff separated from her husband, the Pickel Marble & Granite Company, of which defendant William Pickel is the principal owner, were paying him for his services a salary of $150 per month. When the litigation between plaintiff and Frederick Pickel was initiated his salary was cut to $75 a month, and subsequently he was dropped from its pay-roll altogether.

There was other evidence, not necessary to recite, which satisfied the trial judge and satisfies us also that no contract was ever made whereby William Pickel was to retain the equitable title to the stock issued to his son Frederick.

II. The obligation of Frederick J. Pickel to support his wife (whom the trial court found he had abandoned without good cause), and his further obligation to support his infant child, were matured obligations at the time the corporate stock in controversy was fraudulently transferred to William Pickel. The obligation of a husband to support his wife becomes complete at their marriage, and the obligation of the father to

support his child is complete when such child is born. Such claims for support can not be classed with "subsequent creditors." [Maze v. Griffin, 65 Mo. App. 377.] The laws of our State recognize these claims as of the most binding force and for their payment, no property of the husband is exempt.  [Sec. 8296, R. S. 1909.]

III.  Defendants contend that plaintiff's petition does not specifically allege the fraudulent acts against which she seeks relief.  After the evidence was closed, plaintiff, by leave of court, filed an amended petition so as to conform her pleadings to the facts proven.  No effort was made to strike out this amended petition as a departure; consequently the judgments rests upon the amended petition.  We find it was entirely proper under the facts in this case to permit such an amended petition to be filed. Not only did the defendants change their evidence as previously given in their depositions, but by stipulation of the parties certain issues pending in other suits were engrafted upon this action, and the court was given jurisdiction by such stipulation to determine same in this case.  [Sec. 1848, R. S. 1909.] The amended petition states grounds for equitable relief, and defendant's general attack upon it is disallowed.

IV.  While it is true that the plaintiff has a remedy at law by garnishment against defendant William Pickel as the fraudulent transferee of the corporate stock in controversy, such remedy is entirely inadequate under the facts in this case.

If the plaintiff's judgment for maintenance had been rendered for a gross sum, she would perhaps have an adequate remedy by garnishment against William Pickel as the fraudulent holder of Frederick J. Pickel's stock, but her judgment is not for payment of a gross sum, but for payment of $100 monthly.

With the legal title to the corporate stock standing in the name of William Pickel, plaintiff could by

garnishment only reach a sufficient amount of said stock to pay the installments due her on her judgment for maintenance, and she would have no assurance that William Pickel would hold the stock until other installments of her judgment for maintenance became due.

The evidence shows a determination upon the part of defendant William Pickel to defeat plaintiff's claim for support of herself and child by any means within his power. By filing third party claims to the stock levied upon, he had needlessly brought about a multiplicity of suits, and if this practice were persisted in it would cost plaintiff more to collect her judgment than she would receive. The arm of a court of equity would be short indeed if it could not put forth its hand and impound a fund out of which plaintiff is entitled to relief as a judgment creditor after she has uncovered such fund in the hands of a person to whom it was fraudulently transferred to defeat her judgments, and to compel Frederick J. Pickel to give security for plaintiff's support.

We hold that the trial court has a right to appoint a trustee to take charge of, hold, manage, and sell the corporate stock in controversy to pay the installments of plaintiff's judgments for maintenance as they become due.

V. The amended petition filed by plaintiff recites that defendant Frederick J. Pickel has transferred all his property which possesses any value to his codefendant William Pickel; consequently, his insolvency is fully charged in said petition.

VI. "That the decree amounts to an excessive levy upon defendant's property."

Under the peculiar facts of this case this point deserves very little consideration. The laws of our State and the demands of civilized society require defendant Frederick J. Pickel to support his wife and child; and having divested himself of all his property for the pur-

pose of evading those obligations, he should not be heard to complain of a decree which places property thus fraudulently transferred in the hands of a trustee, to the end that so much of such property as is necessary may be applied in support of his family. The evidence shows that defendant Frederick J. Pickel is thirty years of age, of fair business experience, and able to support himself and family, if he applies his talents to that end.

The conduct of both defendants establishes the fact that if any of the property of Frederick J. Pickel be left in the possession of either him or his father, it will, if possible, be placed beyond the reach of plaintiff. Under such condition of affairs, it is entirely proper for a court of equity to sequester the property of plaintiff's husband.

VII. The allowance in this action of an attorney's fee of $500 to plaintiff for prosecuting this action is not supported by any rule of law or equity to which our attention has been called.

"Upon a conveyance by a debtor being set aside as fraudulent, at the suit of a creditor, and a sale of the property being ordered, the creditor's attorney may be allowed a fee out of the proceeds, but such fee should be paid out of that part applicable to the demands of creditors, and not out of such balance as may come to the debtor after the liquidation of the debts proven and passed." [20 Cyc. 824.]

That part of the judgment entered below which awards an attorneys' fee to plaintiff for prosecuting this action, is erroneous.

VIII. The defendants assert that the circuit court possessed no jurisdiction of the suit, because it is a continuation of the plaintiff's action for maintenance, in which last named action the trial court retained jurisdiction of the parties and subject-matter. This contention is much more subtle than substantial.

In the action for maintenance the trial court did not acquire jurisdiction of the fraudulent transfer of the corporate stock William Pickel, nor did it have jurisdiction of said William Pickel. One of the purposes of this action is to subject the corporate stock of defendant Frederick J. Pickel to the payment of part of the attorney's fees and suit money awarded to plaintiff in the divorce suit; which award is a matter wholly disconnected from the action for maintenance. We rule this point against defendants. [Glen & Hall Mfg. Co. v. Hall, 61 N. Y. 226, l. c. 236.]

IX.  Defendants in their motion for new trial attempt to challenge the constitutionality of that part of section 8295, Revised Statutes 1909, which authorizes the court to sequester a husband's property and compel him to give security for the support of his wife and child.  This belated effort to nullify said section 8295, must be disregarded for two reasons:  (1) It was not called to the attention of the trial court in a timely manner. [Hartzler v. Railroad, 218 Mo. 562] (2) The motion for new trial does not designate the particular clause or provision of the State and Federal Constitutions which render said section 8295, Revised Statutes 1909, invalid. [State v. Brockmiller, 107 Mo. App. 600; Hulett v. Railroad, 145 Mo. 35.]  Therefore, this point is not before us for review.

That part of the judgment of the trial court which awards and allows an attorney's fee of five hundred dollars to plaintiff's (respondent's) attorney for prosecuting this action, is reversed, and the judgment of said trial court is in all other respects affirmed.

*Ferriss* and *Kennish, JJ.,* concur.