Mildred L. THOMAS, Respondent,

v.

Bob H. SHOOTS and Ruby J. Shoots, Appellants.

No. WD 33126.

Missouri Court of Appeals, Western District.

May 3, 1983.

Dennis E. Dibler, Kansas City, for appellants.

Charles E. Weedman, Jr., Harrisonville, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Bob and Ruby Shoots appeal from an adverse judgment in an equity action brought by Bob's former wife, Mildred Thomas.

For failure to pay alimony to Mildred, she sought to set aside a subsequent transfer of real estate from Bob to himself and his present wife, Ruby, under § 428.020 RSMo. 1978.[1] Mildred further sought to set aside, as a fraudulent conveyance, the transfer of his stock in Advance Electric, Inc. The trial court did not void the stock transfer but did set aside the real estate transfer, this real estate being the building housing Advance Electric, Inc. located in Grandview, Jackson County, Missouri (Lot 5, GOLDEN HEIGHTS ADDITION). The only question on appeal is whether the trial court was correct in setting aside the deed upon a finding that Bob's transfer to himself and Ruby, creating title in them as tenants by the entirety, was voluntary and without consideration and for the purpose of hindering, delaying and defrauding Mildred as a creditor of Bob.

A chronology of events may shed some light upon the dispositive facts of this case.

August, 1973—Bob and Mildred were divorced in Cass County, Missouri. A judgment requiring Bob to pay $350 per month alimony was entered. Payments due on the 16th of the month.

1974—Bob and Ruby married.

November 15, 1976—Bob filed to modify downward or cancel alimony payment to Mildred. Court raised judgment to $400 per month.

November 25, 1976—Mildred received November alimony payment.

December, 1976—On the 20th Bob deeded the property in question to himself and Ruby. This deed was recorded on the 29th. On the same date Ruby deeded her house and several lots owned by her to herself and Bob. These deeds were recorded on the 30th.

January, 1977—Having all the stock in Advance, Bob transferred one-half to his brother, the remainder to Bob and Ruby.

January 23, 1977—Mildred received payment for December, 1976 installment.

February 19, 1977—Mildred received the January, 1977 payment.

April, 1977—Mildred received $1200 representing February, March and April payments. This was the last payment made by Bob on the judgment until October 1, 1980, two days before this case was tried.

July, 1977—Bob ordered to make payments through Cass County Circuit Clerks Office on the 16th of each month. Judgment for Mildred against Bob $3600 for delinquent payments. Execution on judgment returned unsatisfied.

December, 1977—Motion for contempt filed against Bob.

February, 1978—Execution returned *nulla bona.*

April, 1978—Judgment debtor's examination of Bob.

October, 1978—Petition filed in Jackson County in this case to set aside transfers of real estate and stock.

July, 1980—Motion to modify filed in Cass County and second amended petition filed in Jackson County. Claim made, Bob was $15,200 in arrears on July, 1977 judgment.

September, 1980—Execution issued— $16,000 back payments due from Bob.

October 1, 1980—Bob pays $16,000 in Cass County leaving approximately $2,000 owing in interest.

October 3, 1980—Trial Jackson County on this cause.

May 29, 1981—Although dated May 29, 1980, judgment entered in Jackson County setting aside real estate conveyance. The court found the real estate deed was entered while Bob was indebted to Mildred, was without consideration leaving Mildred no adequate remedy at law to satisfy the Cass County judgment.

1. All statutory references are to RSMo. 1978 unless otherwise indicated.

The defendants Bob and Ruby Shoots allege error in that there was substantial consideration for the deed, that Mildred was a "subsequent creditor" and that the trial court should not have granted equity relief since Mildred was pursuing other legal remedies in other courts and that she had already received "full and complete relief."

The scope of review in this case is under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Upon this review the judgment of the trial court is affirmed.

Section 428.020 as it applies here holds that every conveyance of any estate in lands made with intent to hinder, delay or defraud creditors shall, as against those creditors be deemed utterly void.

 Bob claims in his first point no such mental intent to defraud could be imputed to him by the circumstances since there was consideration for the deed. He relies upon *Commercial Bank of Boonville v. Kuehner,* 135 Mo.App. 63, 115 S.W. 115 S.W. 510, 511 (Mo.App.1908) which holds that where there is valuable consideration for the transfer the conveyance is not voluntary, not presumed fraudulent and actual intent to defraud must be found to defeat the conveyance. In *Kuehner* the husband and defendant wife had judgment rendered against them by the bank. The wife being insolvent, assigned a note payable to her from her husband to secure payment of an obligation owed by her husband to Vollrath. Vollrath received payment on this note from the husband's bankruptcy estate and the bank sought to set aside the transfer as being without consideration. The bank's claim failed, the court saying the transaction was in essence a pledge to secure payment of a debt and imports a valuable consideration. The facts in this case are not the same as in *Kuehner.* Since intent to defraud is rarely shown by direct evidence Missouri courts have recognized certain circumstances referred to as badges of fraud which frequently attend conveyance to hinder, delay or defraud creditors. *Cohoon v. Cohoon,* 627 S.W.2d 304 (Mo.App. 1981). These badges of fraud from which the presence of fraud may be inferred are:

These badges of fraud are: conveyance to a near relative; a conveyance in anticipation of suit; a transfer of all or nearly all of a debtor's property; insolvency; unusual clauses in instruments or unusual methods of transacting business; retention of possession by the debtor; inadequacy of consideration; and the failure to produce abutting evidence when the circumstances surrounding the transfer are suspicious.

*Id.* at 307. The presence of several of these badges raises a presumption of fraud. As noted in *Barnard v. Barnard,* 568 S.W.2d 567, 570 (Mo.App.1978) the transfer of the property into an estate of tenancy by the entirety in favor of the husband and present wife are "particularly suspicious, and their good faith must be so clearly shown that there is no reasonable doubt as to the honesty of the transaction." Once the plaintiff presents evidence of a voluntary conveyance where some of these badges of fraud are present there exists a prima facie case and the burden of going forward and to show good faith shifts to the defendant. *Tockman v. Shower Doors, Inc.,* 568 S.W.2d 74, 78–79 (Mo.App.1978). From the facts of the present case and the attendant badges of fraud, *i.e.,* conveyance to a spouse, inadequacy of consideration and the result of the transaction leaving Bob immune from execution the court can presume fraudulent intent, and thus the trial court's judgment is justified. Also quite suspicious here are the facts that the conveyance was made within a short period of time after Bob's alimony obligation was increased $50 a month. It is also noteworthy that shortly after the transfer in question Bob stopped paying alimony altogether. By creating this estate by the entireties this property was not subject to execution but, Advance Electric, Inc. still paid rent to Bob and Ruby. On appeal Bob and Ruby said the deed was to effectuate an estate plan. Their evidence simply does not support this contention. Bob stated the transfers were made "to plan their future together", and that "it was something we'd

been planning on doing for a long time", they "just never got around to it", and that it was just something married people normally do. Ruby testified they "just wanted all our property in the same name". With no consideration and in the light of all the attendant circumstances mentioned above, fraudulent intent could be presumed and the defendants did not rebut this presumption. Neither can they shift the burden back to show actual intent because of the *Kuehner* doctrine on the theory that there was consideration for this transaction. No money passed between Bob and Ruby. Although the property she transferred to herself and Bob was very substantial in value there was no business need or necessity for the transfers. These transfers were nothing more than joint gifts made over two years after marriage and four months before payments stopped on the judgment obligation.

In their next point Bob and Ruby contend that Mildred was not a judgment creditor at the time the real estate was conveyed. In support of this contention they point the court toward § 452.080 which applies to the perfecting of a lien on real estate pursuant to a decree for alimony from year to year. This argument does not provide refuge for the defendants because once the property had been conveyed in December, 1976 there was nothing left to be subject to a lien. Those creditors with judgments and those who have legal or equitable liens or who have commenced attachment suits can set aside fraudulent conveyances. *Brolinson v. Brolinson*, 564 S.W.2d 911, 913 (Mo.App.1978). When the original decree of divorce was entered in 1973, even as subsequently modified, this amounted to a judgment qualifying Mildred as an existing creditor. Such a judgment for alimony, child support and attorney fees qualifies the holder as a creditor within the meaning of § 452.080. *Biondo v. Biondo*, 179 S.W.2d 734, 737 (Mo.1944), *Barnard, supra*, at 570; *Harrison v. Harrison*, 339 S.W.2d 509, 512 (Mo.App.1960).

In any event, Bob was delinquent on his alimony payments at the time the deed was made (December 20, 1976) and also on the date the deed was recorded (December 29, 1976). His arguments that these late payments really began in April, 1977 are without merit as is his argument that his ex-wife failed to perfect a lien. The effect of claiming Mildred to be a subsequent creditor, *i.e.,* one who comes after the questioned conveyance would require, as would his first contention, that Mildred show actual intent. His point is denied.

Bob and Ruby finally contend that Mildred has not pursued nor finished all available legal proceedings thus making an action in equity erroneous. Mildred had no further adequate remedies available following Bob's divestiture of assets. Since executions had been returned unsatisfied, it would be senseless to have required more. The defendants next say that additional proceedings had been instituted by Mildred in Cass County that had resulted in his payment to Mildred of the "entire amount due to her upon her judgment, except . . . an undetermined amount of interest . . . .". The fact that he had not paid on this judgment for so long and finally two days before trial paid up except for some $2000 further underscores the need to give Mildred security for Bob's installments to her as they come due. *Pickel v. Pickel*, 243 Mo. 641, 147 S.W. 1059, 1063–64 (Mo.1912). Bob's reasons for not paying are illustrative of the need for equitable relief.

"Well, at the beginning of '77, when moneys I had was really—wasn't like we had—it was pretty well tied up, where I couldn't put my hands on it, and the Cass County Circuit Court didn't seem to push, so—they wasn't after me all the time to pay it. I just kept one letter from them to pay it. If they wouldn't force me to pay, I wasn't too anxious, either, since I could use the money other places. I knew my ex-wife had a sizable savings account, plus she was working every day, so I didn't see any great urgency for it."

He also said that in 1978 he could probably have scraped up the money if the "Cass County Court . . . had got with it." Any relief Mildred may have had under the civil contempt statute, 452.345, would be mini-

mized if the conveyance were allowed to stand. If Bob had no property to be used for payment he could not be jailed, for he would not be financially able to make the required payment. *See, Teefey v. Teefey,* 533 S.W.2d 563, 566–67 (Mo. banc 1976).

The judgment of the trial court is affirmed.

All concur.