MARIE PUGH, RESPONDENT, v. ST. LOUIS POLICE RELIEF ASSOCIATION, A CORPORATION, THE POLICE RETIREMENT SYSTEM OF ST. LOUIS, A CORPORATION, AND FRANK PUGH, DEFENDANTS, THE POLICE RETIREMENT SYSTEM OF ST. LOUIS, A CORPORATION, APPELLANT.— 179 S. W. (2d) 927.

St. Louis Court of Appeals. Opinion filed May 2, 1944.

*Joseph F. Holland,* City Counselor, and *Charles J. Dolan,* Associate City Counselor, for appellant.

*Emmett Golden* for respondent.

McCULLEN, J.—This suit, in equity for sequestration of funds and injunction, was brought by Marie Pugh, as plaintiff, against three defendants; namely, St. Louis Police Relief Association, the Police Retirement System of St. Louis, and Frank Pugh. Each of the two first named defendants was alleged to be a corporation.

After the filing of the petition the court issued an order against defendants to show cause why a temporary injunction should not be granted as prayed for in plaintiff's petition. The return of the Police Retirement System of St. Louis to the order to show cause stated:

"Comes now The Police Retirement System of St. Louis, a corporation, and for its return to the order to show cause heretofore issued herein denies each and every allegation in plaintiff's petition contained.

"For further return this defendant prays that plaintiff's petition be dismissed for want of equity as against it.

"For further return this defendant prays the Court to dismiss the said petition as to this defendant for the reason that any pension annuity or retirement allowance that it may hold as alleged in plaintiff's petition cannot be subjected to any legal process whatsoever under the provisions of Section 9475 of Revised Statutes of Missouri 1939."

The reply of plaintiff to the above return of the Police Retirement System of St. Louis was a general denial coupled with a specific denial and an allegation that under the provision of Section 3377, Revised Statutes Missouri 1939 (Mo. R. S. A., sec. 3377), the fund mentioned in plaintiff's petition is subject to legal process for the payment of plaintiff's alimony.

On September 3, 1942, a hearing was had on the return of the Police Retirement System of St. Louis to the order to show cause, combined with a trial on the merits, and the cause was submitted to the court. Thereafter, on June 3, 1943, the submission of the cause was set aside and plaintiff, by leave, dismissed as to the St. Louis Police Relief Association and the cause was again submitted as to defendants the Police Retirement System of St. Louis and Frank Pugh, resulting in a finding, judgment and decree in favor of plaintiff and against the two last-named defendants. The Police Retirement System of St. Louis alone appealed.

It is conceded by appellant that there is no dispute as to the facts involved herein, but we think it is necessary to set forth rather fully the finding, judgment and decree of the court in order to have a clear understanding of the case and the points urged on appeal.

The court's finding of facts is based upon and follows closely the allegations of plaintiff's petition. The court found that the Police Retirement System of St. Louis is a corporation organized under the law and consists of members of the Police Department of the City of St. Louis, Missouri; that defendant Frank Pugh, on September 4, 1942, was and had been a member of the Police Department of the City of St. Louis, Missouri, and was and is a member of said Police Retirement System of St. Louis; that plaintiff and defendant Frank Pugh are husband and wife and have been husband and wife since January 7, 1914; that on December 1, 1936, defendant Frank Pugh left plaintiff and instituted a suit against her in the Circuit Court of the City of St. Louis, and that on March 14, 1939, a decree of divorce was denied said defendant; that since March 14, 1939, plaintiff and defendant Frank Pugh lived apart, and said defendant on numerous occasions requested plaintiff to agree to a divorce and she refused to do so; on December 8, 1941, defendant Pugh again filed a suit for divorce against plaintiff in the Circuit Court of the City of St. Louis, Missouri, and that said cause is now pending in said court.

The court further found that on January 25, 1942, plaintiff filed in said divorce cause a motion for temporary alimony alleging that she was without funds to support herself or to pay her counsel for representing her in said cause; that on February 5, 1942, said motion for temporary alimony and attorney fees was sustained and defendant Frank Pugh was ordered by the court to pay to plaintiff $60 a month for temporary alimony and $100 attorney fees, and that said attorney fees have not been paid; that defendant Pugh was and is a member of the Police Retirement System of St. Louis and as such has made contributions monthly to its fund, and that there is now to his credit in said fund the net sum of $1538.51; that defendant Pugh had made various demands upon plaintiff to agree to a divorce and that upon her refusal to do so, and in order to prevent her from collecting the temporary alimony allowed her by said Circuit Court, said defendant, on or about July 25, 1942, submitted his resignation to the Police Department of the City of St. Louis to be effective on August 15, 1942, and that said resignation has been accepted by the Police Board of the City of St. Louis, and that said Pugh terminated his employment with said Police Department on said date.

The court further found that under the rules and regulations of the Police Retirement System of St. Louis and the statutes of the State of Missouri, upon the application of defendant Pugh, and upon being notified of the termination of his employment in the Police Department of the City of St. Louis, Missouri, the Police Retirement System of St. Louis would pay to said Pugh the sum of $1538.51, being contributions heretofore paid by him; that upon the termination of his employment with the Police Department of the City of St. Louis Pugh would be without employment and unable to pay to plaintiff the amount of $60 a month for her support and maintenance, as heretofore ordered by judgment and decree of said Circuit Court, and that plaintiff has no security for the payment of installments of alimony; that defendant Pugh is insolvent and is without any other funds and is terminating his employment with the Police Department of the City of St. Louis in order to evade the payment of the judgment and order of the Circuit Court for plaintiff's support and maintenance.

The court further found that said Pugh, in terminating his employment with the Police Department, is proceeding fraudulently in order to deprive plaintiff of her rights of support by said defendant, and endeavoring to secure and collect the sum of money due him by the Police Retirement System of St. Louis to convert it to his own use and place the same beyond the reach of plaintiff, and deprive her of her right of support as his wife; that if said defendant is permitted thus to proceed plaintiff will suffer an irreparable loss and will have no adequate remedy at law to collect her said judgment, and will be without any means of support.

It was also found by the court that, in accordance with Section 1519, Revised Statutes Missouri 1939; the moneys due defendant Pugh by the Police Retirement System of St. Louis, amounting to $1538.51, should be sequestered and set aside to be held as a fund for the support and maintenance of plaintiff, and that said fund is subject to this legal process; and that the provision of Section 9475, Revised Statutes Missouri 1939, providing that the money due a police officer by the Police Retirement System of St. Louis could not be subject to any legal process whatsoever, has no application to a suit by a wife for support and maintenance, and that said provision of Section 9475, Revised Statutes Missouri 1939, is subordinate and subject to Section 3377, Revised Statutes Missouri, 1939, which provides that no property shall be exempt from attachment or execution in a proceeding instituted by a married woman for maintenance, nor from attachment or execution upon a judgment or order issued to enforce a decree for alimony.

The court entered the following order, judgment and decree:

"That the amount of $1538.51, which the defendant the Police Retirement System of St. Louis admits it owes defendant Frank Pugh, be ordered paid into the registry of this court, and the court by its order, judgment and decree releases the Police Retirement System of St. Louis upon said payment from any and all liability to the said Frank Pugh for any moneys which the Police Retirement System of St. Louis, a corporation, might owe to the said Frank Pugh, and that upon the payment of said money to the clerk of this court by the said Police Retirement System of St. Louis, a corporation, a receipt from the clerk of the aforesaid sum of $1538.51 will be a clear release to the Police Retirement System of St. Louis for any moneys which it might owe to the said Frank Pugh, and the court enters its order, judgment and decree that the clerk of this court be ordered and instructed by this court to pay the installments of plaintiff's judgment for alimony as they become due from the funds hereby ordered to be deposited in this court by the Police Retirement System of St. Louis, and that the costs of this action be deducted from the funds to be paid into court, and that a reasonable attorney fee be allowed to the attorney for plaintiff for causing said funds to be brought into court."

The court retained jurisdiction of the cause to make such further orders as might be necessary for fully carrying its decree into effect.

Respondent has filed a motion to dismiss the appeal and strongly urges that it should be dismissed for the reason that appellant, the Police Retirement System of St. Louis, is not aggrieved by the decision of the court. Respondent argues that appellant is a mere trustee holding funds belonging to defendant Frank Pugh, who is satisfied with the decree as shown by the fact that he has not appealed; that the decree herein (also referred to as judgment) does not

affect the property right that appellant has in the funds involved herein; that appellant admits it has these funds belonging to defendant Frank Pugh; that appellant is not and cannot be aggrieved by being required to pay said funds over for the benefit of respondent; that appellant does not have a present interest in the subject-matter of the litigation and, therefore, is not prejudiced by said decree and judgment.

In support of her motion to dismiss the appeal, respondent cites the following cases: Gum v. Myers, 221 Mo. App. 392, 277 S. W. 948; Shock v. Berry et al., 221 Mo. App. 718, 285 S. W. 122; State ex rel. The People's Railway Company v. Talty, 139 Mo. 379, 40 S. W. 942; State ex rel. Fischer et al. v. Vories, 333 Mo. 197, 62 S. W. (2d) 457; and American Petroleum Exchange v. Public Service Commission (Mo. App.), 176 S. W. (2d) 533.

It is unnecessary to review and analyze said cases. We have examined all of them and find nothing therein that would warrant a dismissal of this appeal. All said cases are clearly distinguishable from the case at bar on the facts involved.

The general principle with respect to the right of a trustee of property to take an appeal is stated in 2 Am. Jur., Appeal and Error, sec. 187, as follows:

"A trustee of property is a person aggrieved by a judgment or decree affecting the interest of his *cestui que trust,* and is entitled to appeal therefrom on his behalf."

Section 1184, Revised Statutes Missouri 1939 (Mo. R. S. A., sec. 1184), provides that:

"*Any party to a suit* aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal to a court having appellate jurisdiction . . . " (Emphasis ours.)

Appellant herein unquestionably is a "party" to this suit. It was made a party to the suit by respondent herself. The fact that defendant Frank Pugh did not appeal cannot affect the right of the Police Retirement System of St. Louis to take an appeal. Not only is appellant a "party" to the suit, but it is directly affected by the decree of the court which contains orders specifically directed to appellant concerning the funds it holds, which orders it will be required to obey. Moreover, the court has retained jurisdiction of the cause to carry into effect its orders concerning the fund involved. Appellant is, in our opinion, an "aggrieved" party for the purpose of an appeal.

While the right of appeal is purely statutory and can be allowed only in cases provided for by statute, it is, nevertheless, a right that is favored, and statutes granting that right must be liberally construed. [Fenton v. Thompson (Mo.), 176 S. W. (2d) 456; State ex rel. Connors v. Shelton, 238 Mo. 281, 142 S. W. 417.] We are of the

opinion that we have no authority to dismiss this appeal, and respondent's motion to dismiss is accordingly overruled.

Appellant contends that the court erred in entertaining jurisdiction of this suit for the reason that under Section 9468 (6), Revised Statutes Missouri 1939 (Mo. R. S. A., sec. 9468 (6) ), the Board of Trustees of the Police Retirement System has exclusive original jurisdiction in all matters relating to or affecting the funds of the System. Said section of the statute provides:

"The board of trustees shall have exclusive original jurisdiction in all matters relating to or affecting the funds herein provided for, including, in addition to all other matters, all claims for annuities, benefits, refunds or pensions under this law, and its action, decision or determination in any matter shall be reviewable by the common law writ of *certiorari*, only, and any party to such *certiorari* proceedings shall have a right of appeal from the decision of the reviewing court."

Appellant argues that respondent should have presented her claim in the first instance to the Board of Trustees of appellant. State ex rel. Lambert v. Padberg, 346 Mo. 1082, 145 S. W. (2d) 123, is cited in support of this contention. That was an original proceeding in prohibition in the Supreme Court to prevent the Circuit Court of the City of St. Louis from proceeding in a suit by a police officer against the Board of Trustees of the Police Retirement System for the recovery of benefits alleged to be due him under the statutes governing said Police Retirement System. Said statutes are now Sections 9564-9476, Revised Statutes Missouri 1939 (Mo. R. S. A., sections 9464-9476).

In the Lambert case, *supra,* the Supreme Court held that the police officer not only had failed and refused to submit his claim to the Board of Trustees of the Police Retirement System, but that he had obtained an injunction preventing them from passing on his claim. Said case involved the police officer's own direct personal claim for disability. The police officer was attempting to collect benefits without having complied with the requirements of the statutes governing the fund concerning presentation and proof of his claim. We have no such situation in the case at bar.

In this case there is no dispute between the former police officer, defendant Pugh, and appellant concerning Pugh's right to be paid from the fund the amount of his contributions thereto. It is conceded by appellant that it owes Pugh the sum of $1538.51. In the Lambert case, *supra,* the court simply held that under the statutes governing the Police Retirement System, Sections 9464-9476, *supra,* the police officer was required to have his claim submitted to the Board of Trustees by the Board of Police Commissioners, and to have the Medical Board certify that he was incapacitated for further performance of duty and that such incapacity was likely to be permanent, as

"conditions precedent" to a right of action against the Board of Trustees to compel payment of the claim, and that the claimant had not complied with such requirements.

We think it is clear that the requirements which must be complied with by a police officer in making a personal claim of his own against the fund of the Police Retirement System for disability or retirement benefits cannot be held to be prerequisites to the right of a wife of a police officer to bring a suit in equity, or to the right of a Circuit Court to exercise its equitable powers, to enforce the payment of a judgment for alimony owed by a police officer to his wife. We must remember in this case it is admitted by appellant that it holds a specific sum of money which concededly belongs to the police officer, not because of any claim for disability or retirement benefits, but because of the police officer's resignation from the police force.

There is nothing in the statutes governing the Police Retirement System fund authorizing a wife of a member to file a claim such as respondent is seeking to enforce herein. No authority whatsoever is conferred upon appellant or its Board of Trustees to hear and adjudicate a wife's right to have a husband's share in the fund, when he resigns, subjected to the payment of her judgment for alimony. The jurisdiction of the Board of Trustees to hear and determine claims and the right of a claimant to a review by the common-law writ of *certiorari* apply only in cases wherein the claim is made directly against the retirement system fund, and a hearing and evidence are necessary in order to determine the existence and amount thereof.

No hearing by the Board of Trustees is necessary in the case at bar because it is admitted that the police officer, defendant Pugh, has ceased to be a policeman by reason of his resignation, and that appellant owes him the sum of $1538.51. The only duty remaining for appellant to perform is a mere ministerial act which is made mandatory by Section 9469 (10), Revised Statutes Missouri 1939 (Mo. R. S. A., section 9469 (10) ). It provides:

"Should a member cease to be a policeman, except by death or retirement, *he shall be paid, on demand, the amount of his accumulated contributions* standing to the credit of his individual account in the annuity savings fund." (Emphasis ours.)

We are of the opinion that the procedure under the statute, Section 9468 (6), *supra,* does not afford respondent herein any remedy, not to mention an adequate remedy at law, to enforce her rights. Only a court of equity can prevent a grave and serious wrong being done to her as the wife of defendant Pugh, under the conceded facts in this record.

The limited authority of the Board of Trustees of the Police Retirement System under the statutes, *supra,* cannot be substituted for the power and authority of a court of equity in affording relief to a litigant situated as respondent is in this case. The authority of said

Board of Trustees is strictly limited by the statutes, *supra*. It has no equitable jurisdiction whatsoever. On the contrary, a court of equity has power and authority to do full and complete justice between the parties.

In a very well-considered opinion in a suit brought to set aside a conveyance of corporate stock and to subject said stock to the payment of judgments procured by a wife against her husband for the support and maintenance of herself and child, our Supreme Court said:

"The evidence shows a determination upon the part of defendant William Pickel to defeat plaintiff's claim for support of herself and child by any means within his power. . . . The arm of a court of equity would be short indeed if it could not put forth its hand and impound a fund out of which plaintiff is entitled to relief as a judgment creditor after she has uncovered such fund in the hands of a person to whom it was fraudulently transferred to defeat her judgments, and to compel Frederick J. Pickel to give security for plaintiff's support." [Pickel v. Pickel, 243 Mo. 641, 664, 147 S. W. 1059, 1064.]

We rule against appellant on its point concerning the lack of jurisdiction of the Circuit Court.

Appellant contends that the statute establishing Police Retirement Systems shows appellant is not a corporation and that it is, therefore, not suable by its name; that its Board of Trustees is the only proper party in a suit against appellant. We are unable to agree with appellant's contention.

Appellant was created and is authorized to exist by Section 9465, Revised Statutes Missouri 1939 (Mo. R. S. A., section 9465), which provides:

"In all cities of this state that now have or may hereafter attain a population of five hundred thousand inhabitants or more, *there are hereby created and established retirement or pension systems* for the purpose of providing retirement allowances for policemen of said cities. *Each such system* shall be under the management of a board of trustees hereinafter described and *shall be known as the 'Police retirement system of.......... (name of city)' and by such name all of its business shall be transacted, all of its funds invested, and all of its cash and securities and other property held.* The retirement systems so created shall begin operation as of the first day of October, 1929." (Emphasis ours.)

The above statute shows that the "Police Retirement System" is a legal entity created by a special statute and given a name, and that "by such name all of its business shall be transacted, all of its funds invested, and all of its cash and securities and other property held." It will be noted that the statute does not grant the last above-named powers to the trustees. It gives those powers to the entity by its name,

"Police Retirement System." The trustees are treated in the statute as managers or agents of a principal called "Police Retirement System"; but the statute specifically commands that all of the System's business shall be transacted and all of its property and funds shall be held by and in the name of the entity itself.

Even if it should be held that appellant is not a corporation because it has no corporate seal, and because it is not specifically authorized to sue and be sued, it is nevertheless, in our opinion, a suable entity. Having been created by statute, it is a *quasi*-artificial person which the court can recognize as capable of being sued. [47 C. J., sec. 138, p. 66.]

We believe that in creating the Police Retirement System and giving it such powers and authority in its own name, the Legislature clearly intended that such entity should be the principal in all matters thus provided for. Since it is not a natural person, it is similar to a corporation and can act only through the agency of natural persons. Such persons were provided for and are called trustees.

We are well aware that it has been held, in many cases decided by our courts, that an unincorporated association is not a legal entity and cannot at common law maintain an action in its own name or be sued in such name. The underlying reason for such decisions, however, has no application to the case at bar. Missouri long ago adopted the common law by virtue of a statute which is now Section 645, Revised Statutes Missouri 1939 (Mo. R. S. A., section 645). Under the common law a voluntary unincorporated association was held to have no legal existence apart from that of its members, and that it could not be recognized as an entity suable by its name. Hence, in cases to which the common law is applicable, such an association is not suable by its name. But the common law does not apply where there is an applicable statute, because the statute displaces the common law to the extent that it is applicable, and that is the situation we have in the case at bar.

We have before us in this case an appellant which is something more than an unincorporated association. It is a legal entity created by a statute enacted by the Legislature. Appellant has specific powers, authority, duties and obligations which were conferred upon it by the statute that created it. It is far different from a mere unincorporated association. The latter is a creature of private contract only, and is not an entity created by law, as is appellant herein.

In the case of Clark v. Grand Lodge of the Brotherhood of Railroad Trainmen, 328 Mo. 1084, 1104, 43 S. W. (2d) 404, 413, our Supreme Court, *en banc*, answering a contention similar to that now made by appellant herein, namely, that it was not a legal entity and could not be sued by its name, said:

"It has chosen a name and does bsuniess as a legal entity under and by use of that name. It holds itself out as capable of contracting in

that name and by that name does enter into insurance contracts and in that name collects the premiums and accumulates funds to meet such contract obligations. When sued on such contracts in the name which it has used in making same, it ought not to be allowed to say that it is a mere myth—an intangible non-entity incapable of being sued."

We believe that the strong language of the Supreme Court in the Clark case, *supra*, is applicable to appellant in the case at bar. Notwithstanding the fact that defendant-appellant in the Clark case, *supra*, was only a voluntary unincorporated association, it was held suable by its name, because, among other reasons, it was doing business and holding funds in the name it had chosen. In the case at bar appellant is a legal entity which transacts all of its business, holds property, collects, holds and invests money and pays it out on claims all in its own name by virtue of the command of a statute. Appellant was created and given a name by the Legislature for those very purposes. Despite all these evidences of its existence as a legal entity, appellant contends it is a myth, "a will-o'-the-wisp," against which no judgment can be obtained. We are unable to agree with that view.

We have sustained appellant's contention herein that it is a proper party to take the appeal. Can it reasonably be said that appellant has a legal existence of sufficient substance to take an appeal in its name as an entity, but that it has no existence at all for the purpose of a judgment against it? If appellant is a proper party to take an appeal in its own name from a judgment against it, by what sort of magic does it vanish into nothingness with respect to the judgment? We think that if appellant is a proper party to take an appeal from the judgment herein, then it is also a proper party for the enforcement of the judgment against it. Appellant cannot be both existent and nonexistent at one and the same time.

Furthermore, appellant is not in position to complain on the point of its corporate incapacity in this case. In its return to the order to show cause made in the Circuit Court, appellant stated: "Comes now the Police Retirement System of St. Louis, a corporation, and for its return to the order . . . " It will thus be seen that appellant not only did not deny under oath its corporate incapacity, as required by Section 1116, Revised Statutes Missouri 1939 (Mo. R. S. A., section 1116), in order to put that question in issue, but, on the contrary, admitted by said return that it was a corporation.

Appellant led the court and respondent to believe that it was a corporation and permitted the case to be tried on that theory, and since we are holding herein that it is a suable entity, within certain limits, we believe it should not now be heard to complain on the ground of its corporate incapacity.

In State ex rel. Consolidated School District No. 1 v. Jones, 320 Mo. 353, 8 S. W. (2d) 66, 67, 68, our Supreme Court said:

"The respondent is in no position to question the corporate character of the relator. Section 1415, R. S. 1919, provides that, *where a plaintiff or defendant sues or is sued as a corporation* or a partnership, 'it shall not be necessary to prove the fact of such incorporation or partnership, unless the opposite party puts such fact in issue by affidavit filed with the pleadings in the cause.'" (Emphasis ours.)

In Walker v. The Town of Point Pleasant, 49 Mo. App. 244, it was held that the statute, now Section 1116, Revised Statutes Missouri 1939, *supra,* applies to municipal corporations as well as to private corporations and, under the provisions of said section, the corporate existence of a defendant sued as a municipal corporation is admitted, unless denied by a plea under oath.

We hold that, within the scope of the authority and powers conferred upon it by the statute, Section 9465, *supra,* and in a case of this nature, appellant is a suable entity and that the judgment against it as such is a valid judgment.

Appellant next contends that, under the law, the fund in question is not subject to sequestration. In support of this contention appellant relies on Section 9475, Revised Statutes Missouri 1939 (Mo. R. S. A., section 9475), which exempts said fund from process. In determining this question we are confronted with two different sections of the statutes which seemingly are in conflict with each other. Section 3377, Revised Statutes Missouri 1939 (Mo. R. S. A., section 3377), provides:

"No property shall be exempt from attachment or execution in a proceeding instituted by a married woman for maintenance, nor from attachment or execution upon a judgment or order issued to enforce a decree for alimony. . . . "

Section 9475, Revised Statutes Missouri 1939 (Mo. R. S. A., section 9475), relied on by appellant herein, provides:

"The right of any person to a pension, annuity or retirement allowance, to the return of contributions, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, any other right accrued or accruing to any person under the provision of this article and the moneys in the various funds created under this article are hereby exempt from any tax of the State of Missouri and shall not be subject to execution, garnishment, attachment or any other process whatsoever and shall be unassignable except as in this article specifically provided."

In construing said statutes the court must be guided by the primary rule of statutory construction, which is to ascertain and give effect to the intention of the lawmakers from the words used in the statutes and to adopt that sense which harmonizes best with the context thereof and promotes in the fullest measure the apparent policy and

objects of the Legislature. [State ex rel. Lentine v. State Board of Health, 334 Mo. 220, 65 S. W. (2d) 943. See also, 2 Sutherland on Statutory Construction (2 Ed.), section 363.]

Having in mind the foregoing rules of construction, it may be inquired: What has been and what is the legislative policy of this State, as shown by the statutory law, with respect to exemptions? An examination of the statutes shows that those dealing with exemptions apply principally to married men or men with dependents.

Section 1324, Revised Statutes Missouri 1939 (Mo. R. S. A., section 1324), provides for the exemption of property from attachment and execution when owned by the head of a family. Section 1327, R. S. Mo. 1939 (Mo. R. S. A., section 1327), provides that the head of a family may select other property and hold it exempt from execution in lieu of the property mentioned in Section 1324, *supra*, leaving only ten per cent of salary or wages due such head of a family not exempt. By the provision of Section 1329, Revised Statutes Missouri 1939 (Mo. R. S. A., section 1329), where a married man has absconded or absented himself from his place of abode, his wife may claim the exemptions which the husband could have asserted if he had not absconded.

Under the provisions of Section 608, Revised Statutes Missouri 1939 (Mo. R. S. A., section 608), in a city of the size of the City of St. Louis, the real estate occupied by the head of a family together with his family, as a homestead, is exempt from execution up to the amount of $3000. It thus appears to be a consistent policy of the Legislature of this State to provide for the needs of the family as a unit, and by allowing exemption from execution and attachment to ensure as far as possible against want on the part of the family as a unit. The exemptions are granted not so much for the benefit of the individual as they are for the protection of the family.

We do not believe it can reasonably be said that, in enacting Section 9475, *supra*, the Legislature of this State intended to depart from its long settled policy of protecting the family. On the contrary, we think it intended to safeguard the family in so far as claims against the Police Retirement System funds by outsiders are concerned; that in providing for the exemption of such funds from execution, garnishment and attachment, the intention, in keeping with the settled policy of the State, was to protect said funds, not from the wives of the members of the System, but from outside creditors, who, if the fund were not exempt from their claims, would, by levying execution and other process thereon, defeat the fundamental purpose of the Legislature in creating the pension and retirement system, namely, to provide for police officers and their families or dependents. We believe we would not be warranted in concluding that the Legislature intended to deprive the wife of a member of the Retirement System of her legal and equitable right to compel her husband to

support her. Such a conclusion would be in direct conflict with the spirit and letter of the many statutes, both civil and criminal, which the State has enacted for a wife's protection in that respect.

In Zwingmann v. Zwingmann, 134 N. Y. S. 1077, the defendant, a police pensioner, upon a judgment of separation obtained by his wife, was ordered to make payments for her maintenance. Afterwards, he removed to another state and an order was made sequestering his property in the fund for the payment of such maintenance. The defendant contended that the order of the court was made in disregard of the provisions of Section 352 of the Charter of the City of New York which provied that: "moneys, securities and effects of the police pension fund, and all pensions granted and payable from said fund shall be and are exempt from execution and from all process and proceedings to enjoin and recover the same by or on behalf of any creditor or person having or asserting any claims against, or debt or liability of, any pensioner of said fund." Answering this contention, the court said:

"We do not believe the Legislature, in creating the police pension fund and exempting it from execution and other processes, ever intended that this exemption should be construed to deprive the wife of her legal and moral right to the support of her husband. The whole purpose of the statute is served when the fund is' preserved for the use of the pensioner and those legally dependent upon him for support and maintenance—when it is held intact for the care of the woman who is, in law, but a part of himself, and entitled, with him, to share in the pension. This is in strict analogy with the doctrine of Wetmore v. Wetmore, 149 N. Y. 520, 528, 529, 44 N. E. 169, 33 L. R. A. 708, 52 Am. St. Rep. 752; and this court should not be astute in discovering a way to relieve the defendant of his obligations, voluntarily assumed, because of any strict construction of the language of an act which was designed to give protection to the faithful servants of the public *and those dependent upon them.*" [Zwingmann v. Zwingmann, 134 N. Y. S., l. c. 1078.] (Emphasis ours.) [See also, Hodson v. New York City Employees' Retirement System, 278 N. Y. S. 16, and Schlaefer v. Schlaefer, 112 F. (2d) 178.]

Appellant in the case at bar points out that the exemption provisions involved in the Zwingmann, Hodson, and Schlaefer cases, *supra,* were different from those in the Missouri statute, Section 9475, *supra,* on which it relies. We are of the opinion that the principles applied in said cases apply with equal force to the case at bar, notwithstanding the difference in the wording of the statutes.

Another section of the statute which must be considered in determining the question now under consideration is Section 1519, Revised Statutes Missouri 1939 (Mo. R. S. A., section 1519), which, upon the subject of alimony and maintenance for a wife, provides that the court:

"May award an execution for the collection thereof, *or enforce the performance of the judgment or order by sequestration of property, or by such other lawful ways and means as is according to the practice of the court.* . . . and the court may decree alimony pending the suit for divorce in all cases where the same would be just, whether the wife be plaintiff or defendant, and enforce such order in the manner provided by law in other cases." (Emphasis ours.)

We are of the opinion that under the above statute, and the authority of the case of Pickel v. Pickel, *supra,* which we have heretofore referred to and quoted from, the court was authorized to make the order of sequestration herein.

In Hagemann v. Pinska, 225 Mo. App. 521, 530, 37 S. W. (2d) 463, 466, this court, discussing a judgment for alimony and maintenance and the enforcement thereof, said:

"Instead of permitting the judgment to rest within the purview and protection of the general statutes, however, the Legislature made other provisions for the enforcement of the court's award. It authorized the court to order the husband to give security for both alimony and maintenance; to award an execution upon the husband's neglect or default in giving such security; and to enforce the performance of its judgment by sequestration of property, which means a setting apart of specific property so that it may be subject to execution (Watts v. Watts, 304 Mo. 361, 263 S. W. 421), or by such other lawful ways and means as is according to the practice of the court."

On the record in the case at bar, we hold that the trial court's decision was correct. It would be a sad commentary on our system of justice if a policeman could, with the deliberate purpose of defeating his wife's adjudicated claim for maintenance and support, utilize successfully for such purpose the very exemption statute that was enacted to conserve the funds of the Retirement System for the benefit of himself and family as against outsiders. Moreover, it would be particularly inappropriate for a court of equity to aid him in accomplishing his purpose by giving a narrow construction to the exemption statute, Section 9475, *supra.*

We believe it is not amiss to call attention to the fact that it is not the defendant Pugh who is claiming the exemption here. Exemption is a personal privilege and can only be pleaded or taken advantage of by the execution or attachment debtor. [Howland v. C. R. I. & P. Ry. Co., 134 Mo. 474, 36 S. W. 29.] Appellant is not the proper party to claim the exemption herein. Appellant admits it owes the money to Pugh and we see no good reason why it should not pay the money into court, as ordered, and thereby secure a complete release from its obligation.

The finding, judgment and decree are affirmed. *Hughes, P. J.,* and *Anderson, J.,* concur.