BENEFICIAL FINANCE COMPANY OF HOUSTON, Texas, Plaintiff-Respondent,

v.

YELLOW TRANSIT FREIGHT LINES, INC., Garnishee-Appellant.

No. 25232.

Kansas City Court of Appeals, Missouri.

Dec. 1, 1969.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1970.

Charles L. House, Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, for garnishee-appellant.

Jack N. Bohm, Glass, Bohm, Hirschman & Rostov, Kansas City, for plaintiff-respondent.

SHANGLER, Presiding Judge.

The basic question to be determined on this appeal, although others are also presented, is: May the registrant of a foreign judgment under the Uniform Enforcement of Foreign Judgments Act (Sec. 511.760,

V.A.M.S., 1959) cause a garnishment in aid of execution to issue upon the judgment so registered before it has become a final judgment within the meaning of the Act?

The facts upon which the resolution of that question depends have largely been conceded in an "Agreed Statement of Facts" concluded between the two contending principals, plaintiff, Beneficial Finance Company of Houston, Texas and garnishee, Yellow Transit Freight Lines, Inc. The defendant, W. L. Mayhew, was neither personally served, nor has he entered his appearance. Plaintiff, Beneficial Finance, is a Texas corporation, domiciled and doing business in that state. Defendant, Mayhew, is also a resident and domiciliary of Texas. Garnishee, Yellow Transit, is an Indiana corporation, with executive offices in Missouri and does business in numerous states, including Texas and Missouri.

Defendant had negotiated a loan from plaintiff in Texas. On September 18, 1967, the District Court of Harris County, Texas, entered judgment for plaintiff and against defendant in the amount of $995.04. That judgment was based upon the loan transaction between them. On November 15, 1967, the Texas judgment was registered in the Seventh District Magistrate Court, Jackson County, Missouri, under the provisions of the Uniform Enforcement of Foreign Judgments Act. On that same day, a writ of execution was issued by the clerk of that court which ordered the constable to levy on defendant's property in the hands of the garnishee, Yellow Transit. Thereafter, Notice and Summons of Garnishment was served on Yellow Transit. On December 11, 1967, plaintiff's attorney informed defendant by letter that the Texas judgment against him had been registered in Missouri. It was ·conceded that defendant Mayhew works for Yellow Transit in Texas and that his wages are earned and payable in Texas. He has never worked for Yellow Transit in Missouri. It was further agreed that defendant has been married since 1959, has a family consisting of a wife and three children who reside with him in Texas, and that his family is dependent upon his wages for their support.

Based upon these stipulated facts, the garnishee filed its amended answer which attacked, generally, the jurisdiction of the court over the wages of defendant, and; alternatively, raised the exemption laws of Texas as they appertain to the wages of the head of a family. Plaintiff denied the garnishee's amended answer. The magistrate entered judgment for plaintiff in the amount of $206.01 and the garnishee appealed to the circuit court of Jackson County. Both garnishee and plaintiff moved for summary judgment in that court. Garnishee's motion was overruled; that of plaintiff was sustained. Garnishee, Yellow Transit, appealed from that judgment to this court.

■ The garnishee-appellant, Yellow Transit, contends that the order of summary judgment is void because the Uniform Enforcement of Foreign Judgments Act, upon which it is premised, does not authorize that levy of a garnishment in aid of execution before final judgment which, in fact, issued. It contends, as well, that the levy was wholly ineffective as a garnishment of wages in aid of attachment because of the failure to comply with the jurisdictional requirements of Secs. 525.290, 525.300, 521.050 and 521.060, V.A. M.S., 1959. Defendant Mayhew·was not personally served either before the garnishment of his wages, or at any other time. It is to be conceded that the writ undertaking to garnish his wages did not "affirmatively show the place where defendant reside(d) and the place where the debt (was) contracted and the cause of action arose". Sec. 525.290. As there was a failure to comply with that statutory provision, the court acquired no jurisdiction by that writ *as a levy in aid of attachment.* Vittert v. Melton, Mo.App., 78 S.W.2d 467, 469–470; Martone v. Bryan,

233 Mo.App. 1249, 130 S.W.2d 962, 966. Respondent Beneficial Finance does not dispute the verity of that principle of substantive law but insists, merely, that it does not apply to the garnishment as it was an *execution* on a judgment within the meaning of Uniform Act.

The Uniform Enforcement of Foreign Judgments Law of 1948 was adopted in Missouri by legislative action in 1951 and is designated as Sec. 511.760, V.A.M.S. It was intended to facilitate· the interstate enforcement of judgments and establishes a summary judgment procedure for doing so. (Commissioners' Prefatory Note, U.L. A., p. 474) ; Jackson v. Jackson, 55 Ill.App. 2d 77, 204 N.E.2d 153, 155. The initial step toward the enforcement of a foreign judgment under the Act is taken by applying for its registration in an appropriate court of this state. (Subsec. 2). Once the judgment has been registered, a levy of execution may issue upon it, although sale under the levy is postponed until the judgment·debtor has had the opportunity, after service of process, to assert whatever defenses he may have to the enforcement of that judgment. (Subsecs. 4, 5, 6, 8 and 13). If the defendant defaults, or should the defenses which he has asserted not be sustained, the registered judgment becomes a final judgment of that court in which it is registered. (Subsec. 7). The judgment thus rendered is binding either in personam or quasi in rem, according to the kind of service had upon the defendant. (Subsec. 12).. See, Light v. Light, 12 Ill.2d 502, 147 N.E.2d 34, 37.

The parties contend especially over the meaning of Subsection 6 of the Act. It provides:

"At any time after the registration and regardless of whether jurisdiction of the person of the judgment debtor has been secured or final· judgment has been obtained, a levy may be made under the. registered judgment upon any property of the judgment debtor which is subject to execution or other judicial process for satisfaction of judgments."

"Levy" is defined in Subsection 1[3] of the Act as:

"(T)o take control of or create a lien upon property under any judicial writ or process whereby satisfaction of a judgment may be enforced against such property."

With the provisions of the Act in juxtaposition, we conclude garnishee-appellant's argument that the levy authorized by Sec. 511.760[6] is not meant to be an execution, as "execution would then precede judgment instead of following it" is a mistaken one. The Act does not deal with gross causes of action, but only with judgments entitled to full faith and credit. (Subsec. 1[1]). Although full enforcement of the judgment under the Act, as by sale under the levy, must await final judgment, liminal enforcement of the judgment is authorized at once upon registration by the levy of execution. By that levy, the judgment creditor not only creates a lien upon the property and rights of the judgment debtor, but establishes the priority of his lien. Sullivan v. Sullivan, 168 Neb. 850, 97 N.W.2d 348, 352, 72 A.L.R.2d 1251; Light v. Light, supra, 147 N.E.2d pp. 38–39. The legislative intent is expressed in words of unmistakable clarity. The levy authorized by Subsection 6 of the Act, and defined in Subsection 1[3], is one of execution, "for satisfaction of judgments".

Professor Robert Leflar, the premier draftsman of the Act, in giving an historical exposition of the needs intended to be met by the Act, commented about the levy provision which we have been discussing: "The right to levy on property of the judgment debtor at once after registration of the. judgment, without waiting until the registered judgment becomes a final judgment of the state of registration, can operate to give the judgment creditor a type of relief almost as efficient as would be the case if execution could be issued directly on the foreign judgment * * *. The procedure * * * includes the functions

of the ordinary writ of execution." Leflar, The New Uniform Foreign Judgments Act, 24 N.Y.U.L.Q. 336–53; Commissioner's Note, U.L.A., p. 480; Nunez v. O. K. Processors, Inc., 238 Ark. 429, 382 S.W.2d 384, 385; Sedler, Recognition of Foreign Judgments and Decrees, 28 Mo. L.R. 432, 436 (1968).

■ Only two appellate courts of the eight states which have adopted the Act of 1948 have been presented with the essential issue we consider. In each decision, Nunez v. O. K. Processors, supra, 382 S.W.2d p. 385 and Sullivan v. Sullivan, supra, 97 N.W.2d p. 352, the court held, as we do: The right of levy under the Act upon registration of the judgment is one of execution as upon a domestic judgment. In this case, the rights of the judgment creditor are those which stemmed from the procedure appropriate to garnishment after, not before, judgment. The Act is designed "to make uniform the law of those states which enact it". (Subsec. 17) Our construction effectuates that general purpose.

■ The conclusion we have reached dispels the garnishee-appellant's further contention that the court had no jurisdiction to render summary judgment because, absent personal service upon defendant Mayhew, that jurisdiction was based on a garnishment in aid of attachment of "wages earned out of this state, and payable out of this state * * * where the cause of action arose or accrued out of this state", and was therefore prohibited by the express terms of Sec. 525.300. We have already given our reasons why the garnishment was in aid of execution, not attachment. The statute is not applicable.

The judgment must be reversed, nonetheless, because the circuit court should have ruled, on principles of comity, that all of defendant Mayhew's wages were exempt from execution from garnishment in Missouri. It was stipulated that both plaintiff-creditor and defendant-debtor were domiciliaries of Texas. Garnishee

Yellow Transit did business in Missouri and Texas, and for that matter, in many other states. Defendant Mayhew worked for Yellow Transit in Texas and his wages were payable there. Yellow Transit, therefore, was amenable to garnishment in Texas.

Defendant Mayhew was married, had three children, and his family was dependent upon him for support. It appears not to have been disputed that a "family relation" subsisted among the Mayhews within the contemplation of Texas law. The record establishes it independently. His status as a married man gave rise to his legal obligation to support his wife and children, who, in turn, were dependent upon him for their support. Garrard v. Henderson, (Tex.Civ.App.) 209 S.W.2d 225, 228; Howard v. Marshall, 48 Tex. 471, 477; Roco v. Green, 50 Tex. 483, 490. As a married man and head of a family, defendant Mayhew was entitled to avail himself of the exemptions reserved to every family under the laws of Texas. Dinwiddie v. Tims, 52 Tex.Civ.App. 72, 114 S.W. 400.

Article 3832, Vernon's Ann.Texas Civ. Statutes, 1948, provides inter alia:

"Property exempt to family.—The following property shall be reserved to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts * * *.

"16. All current wages for personal services."

That is merely the statutory embodiment of the constitutional mandate and expression of the policy contained in the Constitution of the State of Texas, Article 16, Section 49, Vernon's Ann.St.:

"Sec. 49. The Legislature shall have power, and it shall be its duty, to protect by law from forced sale a certain portion of the personal property of all heads of families, and also of unmarried adults, male and female."

Thus, by Article 3832, all of defendant Mayhew's current wages were exempt from execution in Texas.

■. Missouri law also provides for an exemption for the head of a family. Sec. 525.030, V.A.M.S., 1959. The exemption extends to wages in excess of ten per cent of the amount due, but may be availed of only by "a resident of this state". Plaintiff did not choose to execute on the Texas judgment in Texas, for the defendant could, and no doubt, would, have claimed the exemption of his total wages as allowed him under Texas law. Since the laws of Texas have no extraterritorial effect, defendant cannot, as a matter of right, claim the Texas exemption in our courts. On the other hand, as a nonresident, defendant cannot claim the benefit of the exemption laws of this state. McDowell v. Friedman Bros. Shoe Co., 135 Mo.App. 276, 115 S.W. 1028, 1030. The allure of Missouri as the forum for execution becomes obvious. It is part of plaintiff's stratagem to evade the exemption. laws of Texas, the state of the defendant-debtor's residence.

■ On principles of comity, however, "as a voluntary act of courtesy and good will", Missouri courts will give effect to the exemption laws of a sister state where the general policy of the two states is the same. Ferneau v. Armour and Company, Mo.App., 303 S.W.2d 161, 167; 35 C.J.S. Exemptions § 2, pp. 10–11; See also, Stoeckman v. Terre Haute & Indianapolis R. R. Co., 15 Mo.App. 503, 508–510. If it be determined that the exemption policies of the two states are congruous, the exercise of comity will not be defeated merely because the amount of exemption provided for by each differs. Schroeder Wine & Liquor Co. v. Willis Coal & Mining Co., 179 Mo.App. 109, 161 S.W. 352, 355.

■ The exemption policies of Texas and Missouri relating to wages under execution are expressed in those statutory enactments on that subject which we have cited. Although the wording of the Missouri statute, Sec. 525.030, reserves its exemption to "the head of the family" and that of the Texas statute, Article 3832, reserves to "every family", the appellate decisions of each state make it clear that the policy underlying the exemption statutes of both states is to protect the entire family from want. A Missouri appellate court stated it in this manner: "It thus appears to be a consistent policy of the Legislature of this state to provide for the needs of the family as a unit, and by allowing exemption from execution and attachment to ensure as far as possible against want on the part of the family as a unit." Pugh v. St. Louis Police Relief Ass'n., 237 Mo.App. 922, 179 S.W.2d 927, 935. One policy expressed by the text of Article 16, Sec. 49 of the Texas Constitution, previously cited by us, has been held to be the protection of the families of debtors "from deprivation of support", (Interpretive commentary to that section in Vernon's Ann. Texas Const.) The Texas Supreme Court early declared that the purpose of Article 3832 relating to exemptions was to protect the family "from absolute want, arising from the vicissitudes of life". Roco v. Green, supra, 50 Tex. p. 488. Thus, we conclude, that although there is a difference in the amount of the exemption allowed by each state, there is no difference at all as to their policy. The circuit court, on principles of comity, should have given effect to Article 3832, Vernon's Texas Statutes by recognizing the exemption in favor of the defendant Mayhew, thereby finding that no wages of defendant were subject to garnishment, and hence, that the garnishee was entitled to be discharged.

A garnishee may claim, and the court may grant, an allowance for outlays, loss of time and counsel fees attending the defense of proceedings against a garnishee if the plaintiff fails to recover in attachment or under a garnishment of execution. McQuarry v. Geyer, 57 Mo.App. 213, 219;

Gabler v. Continental Casualty Company, Mo.App., 295 S.W.2d 194, 198; Bolten v. Colburn, Mo.App., 389 S.W.2d 384, 392; Sec. 525.240, V.A.M.S., 1959; Civil Rule 90.23, V.A.M.R. To merit consideration, the claim must be presented to this court, with supporting affidavit, "before a final submission of the cause on briefs". Civil Rule 83.19, V.A.M.R. In its affidavit, the garnishee suggests as reasonable an allowance of $500.00 for an attorney's fee. Additionally, the garnishee seeks reimbursement for $208.31 which represents outlays for the printing of its brief and for other expenditures. Plaintiff Beneficial Finance does not dispute the necessity of reasonableness of any such charge. It does contend, however, that the garnishee's claim should be disallowed because not timely filed.

Oral argument of this case on appeal was originally docketed for October 8, 1969. To suit the court's convenience, it was advanced to October 6, 1969 and argued then. Plaintiff points to Civil Rule 83.06, V.A.M.R. which requires an appellant's brief to be filed within forty-five days of hearing. And, since appellant did not file a reply brief, although authorized to do so within five days of hearing, plaintiff contends that the filing by respondent of its brief constituted the "final submission of the cause on briefs". The garnishee's claim and affidavit were filed thereafter and, it is contended, must thus be disallowed.

As it relates to appellate procedure, the stage of "final submission" is not reached until the court takes the case under advisement for decision. That is usually coincident with the conclusion of oral argument. Civil Rule 83.19, V.A.M.R. must be read to mean that, to merit consideration, the garnishee's claim and affidavit must be filed before the court has taken the case under advisement for decision, provided that the opposing party has been afforded sufficient time to dispute the verity and merit of the claim.

The garnishee's supported claim was presented to us some seven days prior to the date the appeal was docketed for argument and some five days before oral argument was actually heard. Plaintiff did not then, nor does it now, complain that it was deprived of sufficient time to dispute the claim, or any part of it. In fact plaintiff does not dispute it. We, in turn, find the requested judgment of allowance to be a reasonable indemnity for counsel fees and expenses incurred by the garnishee relating to this litigation. Plaintiff's contention must be denied.

The judgment is reversed, and the cause is remanded with directions that the trial court enter an order discharging the garnishee. The trial court is further directed to enter judgment in favor of the garnishee for $708.31 as indemnity for its counsel fees and expenses of litigation.

All concur.