Ruth F. GEIWITZ, Plaintiff-Respondent,

v.

Chester W. GEIWITZ, Defendant,

Chicago, Burlington and Quincy Railroad Company, Appellant-Garnishee.

No. 24789.

Kansas City Court of Appeals, Missouri.

Sept. 30, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 5, 1971.

Application for Transfer Denied Jan. 10, 1972.

Clyde J. Linde and George D. Blackwood, Jr., of Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellant-garnishee.

Dan Hale, of Strop, Watkins, Roberts & Hale, St. Joseph, for plaintiff-respondent.

HOWARD, Judge.

This case comes to the writer on reassignment. The Chicago, Burlington and Quincy Railroad Company appeals from an order of the circuit court of Holt County directing it as garnishee to pay $96.51 to the clerk of that court to be applied to the satisfaction of a judgment that plaintiff has against defendant.

On May 18, 1964, plaintiff, Ruth F. Geiwitz, was granted a decree of divorce from defendant, Chester W. Geiwitz, and alimony of $100.00 per month. Thereafter, under a general execution, a writ of garnishment was directed to the railroad, de-

fendant's former employer. Interrogatories to garnishee were filed by plaintiff and in due course garnishee answered the interrogatories denying its possession of any property belonging to defendant or any debt due him. Supplementing its answers, garnishee-railroad stated that defendant was a retired former employee of the railroad and as such received a Railroad Retirement Board pension and also a "voluntary, non-contractual gratuity" as a supplemental pension paid by the railroad in the gross sum of $112.25 per month, which after various deductions, resulted in a net "gift" to defendant in the amount of $96.51, and that since this pension was "non-contractual" in nature, the railroad was not indebted to defendant ·and thus was not subject to garnishment by plaintiff. Plaintiff denied the answers and the issue thus joined was tried to the court without a jury. It found against the contentions of the railroad and ordered it as garnishee to pay to the clerk of the court the sum of $96.51 to be applied towards satisfaction of plaintiff's judgment for alimony.

The issue raised by this appeal is whether this so-called "voluntary, non-contributory pension" payment can be subjected to garnishment by a former spouse of the pensioner. For the reasons below we answer this question in the affirmative.

The railroad argues here as it did in the trial court that the pension provided by it for its former employees constituted only a gift or gratuity and that former employees have no vested right in the pension allowance until the sum is actually paid into the hands of its former employees; that the agreement by its terms authorizes the railroad to withhold or reduce payments in its discretion. It is further argued that because the pensions are non-assignable under the terms of the agreement, they are not subject to garnishment.

Plaintiff on the other hand argues that the label applied to this payment of money is immaterial; that it matters not whether it is a gratuity, gift or bonus. She says

the simple question is: "Do they owe it?" She asserts that the defendant's right to payment was vested in him by reason of his employment; that the pension arrangement became a contract enforceable by defendant, because the contract was wholly executed in that defendant knew of the benefits to which he was entitled and having knowledge thereof continued his employment in reliance upon the plan.

Garnishment is governed by statute. Section 525.010, RSMo., 1969, V.A.M.S., provides: "All persons shall be subject to garnishment * * * who * * * have in their possession goods, moneys, or effects of the defendant. * * *"

We start with the basic proposition that a garnishee can only be compelled to deliver assets of defendant to plaintiff if the garnishee is indebted to the defendant. Neuer v. O'Fallon, 18 Mo. 277. A judgment creditor can have no greater rights against the garnishee than the judgment debtor. Potter v. Whitten, 170 Mo.App. 108, 155 S.W. 80; State ex rel. Kennedy v. Harris, 228 Mo.App. 469, 69 S.W.2d 307; and Ralston Purina Co. v. King, Mo.App., 101 S.W.2d 734.

The railroad's "supplementary pension plan" was instituted effective January 1, 1952. The plan provides for mandatory retirement at age 70 and voluntary retirement at age 65 (with certain exceptions not here pertinent) and also for disability retirement under certain specified conditions. The defendant, Chester W. Geiwitz, was a long-time employee of the railroad who qualified under this plan and was retired and commenced receiving disability retirement payments as of October, 1964. These payments were made monthly until the writ of garnishment was served on the railroad. Thereafter, the railroad held up the payments pending the determination of the issues raised as to the garnishment.

Certain parts of paragraphs 8, 9, 12, 14 and 15 of the plan are pertinent to the railroad's contention and they are set out as follows:

"8. No regular sum shall be set apart as a pension fund. The amount required will be charged out each month to operating expenses.

"Whenever it shall be found that the basis of pension allowances creates demands in excess of any amount that may be determined upon to be expended by the Company from time to time, and as often as such conditions may arise, a new basis ratably reducing the pension allowances may be established to bring the total expenditures within the said limits, and the decision of the Board of Directors of the Company in establishing such reduced basis shall be final and conclusive.

"9. Pension allowances authorized pursuant to this plan shall be paid monthly during the life of the pensions; provided, however, that payment may be withheld in case of gross misconduct or for other reasons at the discretion of the Board. * * *"

*       *       *       *       *       *

"12. In order to preserve direct personal relations between the Company and its retired officers and employees and that they may continue to enjoy the benefit of the pension plan, no assignment of pension allowances will be permitted or recognized, and any assignment thereof or of any interest therein is invalid.

*       *       *       *       *       *

"14. Neither the establishment of this pension plan nor any of its provisions, nor the granting of a pension allowance, nor any other action now or hereafter taken by the Board of Pensions or by officers of the Company, shall be held or construed as creating a contract, or giving to any officer or employee right to be retained in the service, or any right to a pension allowance; and the Company expressly reserves, unaffected thereby, its right to discharge any officer or employee without liability (other than for salary or wages due and unpaid),

whenever the interest of the Company may so require.

"All pension allowances herein provided for are gratuities and remain the exclusive property of the Company until actual payment thereof to the pensioner and may be withdrawn and/or reduced as provided for in Rule 8.

"15. This plan shall take effect January 1, 1952. It may be rescinded, altered, or amended only on authority of the Board of Directors of the Company."

The railroad first contends that this plan does not constitute a binding contract between it and Chester Geiwitz; that consequently the payments made under the plan constitute gratuities or gifts; that as a result thereof, the railroad is not indebted to Chester Geiwitz; that he would have no cause of action for force payment of his pension under the plan and that consequently it is not subject to garnishment. We cannot agree.

■ Paragraph 9 of the plan provides unequivocally that pensions "shall be paid monthly during the life of the pensions". It then provides that payment may be withheld in case of gross misconduct. There is no contention here that Chester Geiwitz is guilty of any misconduct and it is clear that the railroad has taken no action to withhold his pension under this provision. It is further provided in this paragraph that payments may be withheld "for other reasons at the discretion of the Board." However, the cases make it clear that such general language does not authorize fraudulent or arbitrary withholding of the payments by the employer. See Menke v. Thompson (C.C.A. 8), 140 F.2d 786, and Molumby v. Shapleigh Hardware Company, Mo.App., 395 S.W.2d 221. Again, the record is clear that the railroad has not undertaken to withhold the payments due to Chester Geiwitz under the plan pursuant to this provision.

■ Paragraph 15 provides for the effective date and states that the plan "may be rescinded, altered, or amended only on authority of the Board of Directors of the Company." Again, the record is clear that the company has not purported to make any change in the plan pursuant to this provision. Paragraph 14 in part provides: "All pension allowances herein provided for are gratuities and remain the exclusive property of the Company until actual payment thereof to the pensioner and may be withdrawn and/or reduced as provided for in Rule 8." Rule 8 provides that there is no fund set apart for the payment of pensions but that the amounts necessary shall be "charged out each month to operating expenses." It then provides that in the event the payments under the pension plan exceed the amount the railroad can reasonably pay out of operating expenses, it may ratably reduce all pensions to bring the total expenditure within reasonable bounds. Again, the record is clear that the railroad has not attempted to reduce all pensions or any pensions under this provision.

■ It is not contested that Chester Geiwitz qualified for a disability pension under this plan and had regularly received the same before this controversy arose. In spite of the provisions contained in paragraph 14 of the plan that payments thereunder shall not be construed as creating a contract or give any employee a right to a pension and that all payments are gratuities, the law of Missouri is clear that a contract can result therefrom and did result in the case at bar. In Molumby v. Shapleigh Hardware Company, Mo.App., 395 S.W.2d 221, it is stated that in instances of a voluntary, non-contributory, private pension plan, an enforceable contract may be created where there is consideration therefor moving from the employee to the employer, and that the act of the employee in continuing in his employment when he is not otherwise bound to do so and where such continuation is in reliance on the pension plan which is known to the employee, such continuation in employment constitutes consideration and if the employee complies with the conditions in the plan,

it becomes an enforceable contract. It is further stated that after the employee begins to receive benefits under the plan, he has a vested right therein and can enforce continued payments. Such doctrine is supported by the decisions in Wellington v. Con P. Curran Printing Co., 216 Mo.App. 358, 268 S.W. 396, and Feinberg v. Pfeiffer Company, Mo.App., 322 S.W.2d 163. The Utah Supreme Court arrived at a similar result based upon similar reasoning in Schofield v. Zion's Co-op. Mercantile Institution, 85 Utah 281, 39 P.2d 342.

In the case at bar the defendant, Chester Geiwitz, has complied with all of the conditions set out in the plan precedent to his right to receive a disability pension thereunder. The company has not attempted to use any of the "escape clauses" which are written into the plan and at this point they become immaterial. The promulgation of the plan constituted an offer by the company which was accepted by Chester Geiwitz by his continuing in the employ of the railroad with knowledge of and in reliance on the pension plan. As stated, his employment was sufficient to qualify him for a pension under the provisions of the plan. We, therefore, hold that a valid and subsisting contract came into existence; that the railroad was legally obligated to pay the pension amounts here in question and that Chester Geiwitz could enforce such payment. It follows, therefore, that the payments were subject to garnishment.

The railroad next argues that because paragraph 12 of the plan provides that "no assignment of pension allowances will be permitted or recognized, and any assignment thereof or any interest therein is invalid", the rights to pension payments under the plan are non-assignable and, therefore, not subject to garnishment. As authority therefor, it cites the decision of the Supreme Court of New Jersey in Seventy-First Street & Broadway Corp. v. Thorne, 10 N.J.Misc. 99, 157 A. 851. That case involved a ruling at the trial court level on a motion to dismiss the return to

a writ of scire facias. The court had already determined that the motion could not be sustained before it entered on a discussion of the effect of the provision prohibiting assignment. Because of the differences between the facts involved and the contentions decided in that case and those in the case a bar, we do not consider the Thorne case persuasive.

Although not cited by the parties, the decision of the California Court of Appeals in Thomas v. Thomas, 192 Cal.App. 2d 771, 13 Cal.Rptr. 872, seems most analogous as to facts and issues at bar. In that case, the divorced wife sought by a proceeding analogous to garnishment to lay hold of the amounts due her ex-husband as a retired employee of the Southern California Edison Company. The retirement plan prohibited assignment of rights thereunder. The court, after considering many California statutes and decisions, concluded that the prohibition against assignment did not violate the public policy of California but rather was in conformity therewith and concluded that the prohibition against assignment was valid and would be enforced.

It thus appears from the Thomas case, as well as the Thorne case, that the matter of public policy of the state bears vitally on the validity of a prohibition against assignment. The Missouri Legislature has set out the public policy of this state in Section 452.140, RSMo 1969, V.A. M.S. This statute was last amended in 1957. It provides as follows:

"No property shall be exempt from attachment or execution in a proceeding instituted by a married woman for maintenance, nor from attachment or execution upon a judgment or order issued to enforce a decree for alimony or for the support and maintenance of children. And all wages due to the defendant shall be subject to garnishment on attachment or execution in any proceedings mentioned in this section, whether the wages

are due from the garnishee to the defendant for the last thirty days' service or not."

This statute was extensively considered in the case of Pugh v. St. Louis Police Relief Ass'n., 237 Mo.App. 922, 179 S.W.2d 927. In that case the divorced wife of a policeman sought to collect on her judgment for alimony. The policeman had resigned from the police force and under the pension plan was entitled to a refund of contributions. The statute setting up the police retirement system provided that monies due under the plan were exempt from all process. The court considered this exemption statute in connection with what is now Section 452.140, supra, and concluded that the policy of Missouri law was to protect the head of a family and those dependent upon him from the claims of other creditors; that the wife, even though divorced, was entitled to support from her husband and was thus one of those to be protected by Missouri statute. The court, therefore, concluded that in spite of the statute exempting payments under the pension plan, such were subject to garnishment by the wife to be applied upon her judgment for alimony. In the later case of Ferneau v. Armour and Company, Mo.App., 303 S.W. 2d 161, the court reiterated that the statute above set out expressed the public policy of the state of Missouri.

We, therefore, hold as expressed in Section 452.140, that the provisions in the railroad pension plan prohibiting assignment has no applicability under the circumstances present in the case at bar and that the divorced wife of Chester Geiwitz is entitled to judgment against the railroad as garnishee for the amount due.

The judgment of the trial court is affirmed.

CROSS, J., and PAUL E. VARDEMAN, Special Judge, concur.

SHANGLER, P. J., not participating.